## Harris et al., Appellants, *v.* Susquehanna Collieries Co.

Argued May 12, 1931.   Before FRAZER, C. J., WALL-ING, SIMPSON, KEPHART, SCHAFFER and MAXEY, JJ.

*John Wattawa,* with him *John Walsh* and *C. K. Morganroth,* for appellant.—Plaintiffs were not guilty of

laches: Westhaeffer v. Ry., 163 Pa. 54; Penna. Land Co.'s App., 96 Pa. 116; Quinn v. Spring Co., 293 Pa. 152.

The evidence and findings in this case show clearly that the injury to the plaintiffs is continuing, thus requiring a multiplicity of suits at law; that the remedy at law is inadequate; that the injury is irreparable; that the defendants intend to continue indefinitely the practices herein complained of; and that, therefore, the plaintiffs are in need of injunctive relief.

In attempting to prevent loss or injury to property, a reasonable compensation for time and labor necessarily expended will be allowed as damages.

*Charles C. Lark,* with him *Henry A. Gordon,* for appellee.—The plaintiffs knew, when they erected their greenhouses, that they were in a mining region; they were in a locality born of mining operations, and which had become rich and populous as a result thereof: Pennsylvania Coal Co. v. Sanderson, 113 Pa. 126; Pfeiffer v. Brown, 165 Pa. 267; Harvey v. Coal Co., 201 Pa. 63; Moore v. R. R., 89 N. E. 674.

The alleged injuries in this case are damnum absque injuria: Alexander v. Coal Co., 254 Pa. 1; Penna. Coal Co. v. Sanderson, 113 Pa. 126.

OPINION BY MR. CHIEF JUSTICE FRAZER, June 27, 1931:
Plaintiffs, in their bill filed May 17, 1926, seek to recover compensation and injunctive relief for averred damages received from silt or fine dust carried by wind from defendant's culm banks to and upon their greenhouses. The facts found by the chancellor are substantially as follows: The three plaintiffs in 1897, as copartners, engaged in the raising and culture of flowers in Coal Township, Northumberland County. They erected a greenhouse in 1897, a second in 1901 and a third in 1903, all closely grouped. 'Defendant's colliery, referred to in the pleadings as the Luke Fidler operation, is located upon its coal lands immediately adjacent and con-

tiguous to land upon which plaintiffs' three greenhouses are erected. Defendant acquired the colliery in 1917, its predecessors in title having operated it for more than forty years previous to the construction of plaintiffs' hothouses. Years before the erection of the greenhouses, two large culm banks had been deposited and formed by the predecessors in title of defendant. The eastern hothouse was erected within two hundred feet of the northern culm bank and the other two within two hundred to two hundred and fifty feet of the western culm bank. In 1914, defendant's predecessor in title began reclamation of the coal in the two banks. The operation entailed passing the culm through the breaker and washery of the colliery to remove the salable coal. Part of the rock and slate from this operation was deposited on the northern and western culm banks, and later carried to another portion of defendant's property; the fine dust or silt complained of,—the residual product passing through a one-sixteenth-inch mesh,—was carried by water in sluices to the site of the old northern bank and there deposited. The court found as a fact that no injury resulted to plaintiff due to negligence in the manner in which these deposits of silt were made and accumulated. In 1918, plaintiffs discovered silt and fine material were being carried by the wind from defendant's culm bank onto their greenhouses and notified defendant of the fact. Defendant neither gave nor promised relief but continued making deposits upon the northern bank until sometime in 1919 when it ceased depositing at that point and began placing the refuse upon the site of the old western bank. In 1923, a similar complaint was made to the general manager, superintendent and other members of defendant company but with the same result. The court found as a fact that the silt from defendant's banks is carried into plaintiffs' hothouses "by the ordinary action of the winds." Although this dust or silt "is deleterious and pernicious to plant and floral life, souring the soil, spotting the

plants and flowers, pitting and discoloring the glass" of plaintiffs' hothouses, and is otherwise destructive to the woodwork and iron of plaintiffs' buildings, and although it was found that the injuries are of a continuing nature, the chancellor refused the relief prayed for because plaintiffs were guilty of laches in instituting this proceeding.

To the chancellor's findings of fact, conclusions of law, and his answers to requests for findings filed by plaintiffs and defendant, both parties filed exceptions, all of which were dismissed by the court in banc in an opinion affirming the chancellor's decree. From this decree plaintiffs have appealed.

On this appeal we deem it unnecessary to discuss separately plaintiffs' thirty-one assignments of error. Briefly stated, it is plaintiffs' position that the alleged nuisance should be enjoined because of its continuing character; that laches should not have been imputed to plaintiffs inasmuch as no injury resulted to defendant by reason of the eight-year delay in filing their bill; that plaintiffs should be compensated for the damages the silt has already caused to their flowers, to the hothouses and to their business generally.

Whatever the merit of plaintiffs' case was in 1918 when the silt began to be carried by wind into plaintiffs' property, we are now faced with the fact that they have waited eight years before asking for relief. Accordingly we pass directly to the controlling question of laches. If it must be decided against plaintiffs, this decision renders unnecessary discussion of other issues here involved.

Appellants urge upon us the well-known rule, recently repeated by us in Quinn v. American Spiral Spring & Mfg. Co., 293 Pa. 152, 160, that "laches will not be imputed to plaintiff where no injury results to defendant by reason of the delay." In Stewart Wire Co. v. Lehigh Coal & Navigation Co., 203 Pa. 474, 478, this court said: "A suitor who by laches has made it impossible

for a court to enjoin his adversary without inflicting great injury upon him will be left to pursue his ordinary legal remedy." In the present case, the question is, Did plaintiffs, by waiting eight years before instituting these proceedings, place defendant in such position that it would now be inequitable to the latter to grant the injunction? It is to be remembered that "relief by injunction is not controlled by arbitrary or technical rules but the application for its exercise is addressed to the conscience and sound discretion of the court. Where a party seeks the intervention of a court of equity to protect his rights by injunction, the application must be seasonably made, or the rights may be lost, at least so far as equitable intervention is concerned. It is a rule practically without exception that a court of equity will not grant relief by injunction where the party seeking it, being cognizant of his rights, does not take those steps to assert them which are open to him, but lies by and suffers his adversary to incur expenses and enter into burdensome engagements which would render the granting of an injunction against the completion of his undertaking, or the use thereof when completed, a great injury to him": Stewart Wire Co. v. Lehigh Coal & Navigation Co., supra.

An examination of the record shows plaintiffs' eight-year delay in bringing this action has rendered it impossible for a court of equity to grant the relief prayed for without imposing great and inequitable hardship and injury upon defendant. The record shows that plaintiffs have been fully cognizant of the damage caused them by blowing silt since 1918. The record shows and the court found that both times formal complaint was made to the officials of defendant company no relief or promise of relief was given and defendant continued to make the deposits as before. It is immaterial that plaintiffs made these assertions of right if they took no legal steps to establish them: McGrann v. Allen, 291 Pa. 574, 580. We agree with the lower court that if the expense

to which defendant would be put would be the same at the present time as a determination of the difficulties between the parties would have entailed in 1918, the defense of laches would fall. The expense however has been greatly increased by the delay. This delay has placed defendant in a position that, to grant the injunction now, would cause it added expense and great injury, as it would be obliged to bear not only the considerable expense already incurred in depositing the silt, which might have been sold and shipped immediately, where it has been placed from time to time since 1918, but the additional expense of its removal. Had plaintiffs legally asserted their rights at the time the silt banks first became an annoyance to them, a great part of the expense necessary to remove the trouble would have been avoided and their damage very much lessened.

We need not discuss the question of future falling of silt on plaintiffs' property, since the court found it would avail plaintiffs nothing to grant an injunction against further annoyance and damage at the points above mentioned, as the dust carried is not only from recent deposits but from the culm piles previously there. To afford plaintiffs the relief prayed for, defendant would not only have to be enjoined from continuing to deposit silt as heretofore, but also be required to remove the material already deposited. These banks are exceedingly large and silt will be carried by the wind in greater or less quantities therefrom for years to come unless defendant is compelled entirely to remove the culm banks. Since 1918 these banks have grown in size, in one case to 45 feet wider than the original bank and 400 feet longer. During these eight years defendant has had the expense of transporting the culm by sluices to the sites where deposited. The court found the sluice method of conveyance was "usual, ordinary and regular" in this industry, which finding is supported by evidence. The court also found the only location on defendant's property at which

silt could be placed to avoid being blown into plaintiffs' greenhouses is two thousand feet distant. Although it is true defendant could have sold the silt and shipped it away, it is equally true it had a right to store it on its own land pending such time as it could procure a better price for the product. The present piles are near the railroad and, were this injunction granted, if defendant should sell the silt at a future time, it would not only have incurred the added expense above mentioned, but would also be put to the expense of bringing the property back to the railroad for shipment.

Defendant had no remedy to determine its right to use of the land at the time the protests above referred to were made, and plaintiffs, who could well have asked for a determination of the question, did not take such action, but on the contrary suffered defendant to continue in its use of its land—a use defendant believed to be rightful—as it had been doing up to the time of the filing of this bill. Quinn v. American Spiral Spring & Mfg. Co., supra, urged by plaintiffs in support of their contention that relief should not be withheld on the basis of laches, is not in point, as an examination of that decision shows the fourteen months' delay there involved did not, unlike the present one, increase defendant's burden in removing the offending matter complained of. In Sullivan v. Jones & Laughlin Steel Co., 208 Pa. 540, also a "dust case," there was no such harmful delay as is here involved.

In Orne v. Fridenberg, 143 Pa. 487, 501, where an injunction was sought to restrain the maintenance of buildings and parts of buildings in violation of restrictive conditions imposed on defendant's property, this court said: "Indeed, equity requires the utmost diligence in this class of cases upon him who invokes preventive aid, and a slight degree of acquiescence is sufficient to defeat the application since every relaxation which plaintiff permits in allowing erections to be made in violation of the covenant amounts pro tanto to dis-

affirmance of obligation. Where, therefore, plaintiff lies by for a period of four or five months permitting defendants to go on with their erections [of buildings, they will] be denied relief by injunction." There is a striking analogy between building cases and the present. We notice the important fact that in mining districts such as here involved, it is a necessary practice of mining operations to erect large culm and silt banks upon which many tons of the residue of collieries must be piled every day. The testimony of the host of witnesses produced by defendant to establish the methods by which silt and other residue was deposited by other collieries in the vicinity, amply establishes this fact. As said in Pa. Coal Co. v. Sanderson, 113 Pa. 126, 158: "The plaintiffs knew, when they purchased their property, that they were in a mining region; they were in a [district] born of mining operations, and which had become rich and populous as a result thereof." Although it may be true that silt, which is salable, should be considered personal property, yet when great piles of it are made upon the property of a mining company, whether for storage purposes or to remain there permanently, they are erections of such considerable and permanent nature as, by analogy with the above quoted rule applying to building erections, call for imposition of the same stringent rule of laches on those who, knowing they are nuisances, suffer them to be erected. In the face of an actual knowledge that the silt banks were nuisances to them, the present plaintiffs took no legal action for a period of eight years during which time the silt and other residue was being piled higher and higher, their damage gradually increasing, and the cost to defendant of correcting the situation growing proportionately. Plaintiffs' laches must be held to defeat their prayer for relief.

The above conclusion disposes of the necessity of passing upon the question of damages, for as above said, "A suitor who by laches has made it impossible for a court

to enjoin his adversary without inflicting great injury upon him will be left to pursue his ordinary legal remedy": Stewart Wire Co. v. Lehigh Coal and Navigation Co., supra, page 478; Kessler v. Ensley, 123 Fed. 546, 567; 10 R. C. L. 374. Since the above considerations completely resolve our decision in the present appeal, we omit further discussion of the additional arguments advanced by appellants.

The judgment is affirmed; costs to be paid by appellants.