American Surety Company of New York,
Appellant, *v.* Dickson et al.

Argued May 11, 1942. Before SCHAFFER, C. J.;
MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*George E. Beechwood,* with him *Mark E. Lefever,*
*Frederick E. Smith* and *Conlen, LaBrum & Beechwood,*
for appellant.

*John Russell, Jr.,* with him *Morgan, Lewis & Bockius,*
for Fidelity-Philadelphia Trust Co., appellee.

*Thomas Raeburn White,* with him *Hamilton Page* and *White & Staples,* for intervenors, appellees.

*J. B. Colahan* and *Townsend, Elliott & Munson,* for Provident Trust Co., appellee.

*Harold D. Saylor,* trustee ad litem, P. P., with him *Strong, Saylor & Ferguson.*

OPINION BY MR. JUSTICE PATTERSON, September 28, 1942:

This appeal is from a decree dismissing a bill in equity in aid of an attachment execution.

Erskine Hazard, grandfather of Arthur G. Dickson, the judgment debtor, died on February 26, 1865, leaving a will wherein he gave a share of his estate in trust for Dickson's mother, Fanny Hazard Dickson, for life, with a general power of appointment by will as to the principal, and providing that in default of appointment the fund should go to her children, in equal shares. Fanny Hazard Dickson died testate, on August 17, 1913, and in her will exercised the power by appointing the fund to her husband, Dickson's father, for life, and on his death one-third of the principal to Dickson, her only child, absolutely, and the other two-thirds to Dickson for life, with remainder to his issue and in default of issue to her nephews and nieces then living per capita. The orphans' court awarded the fund to Dickson's father for life, without security other than his own bond, subject to Dickson's approval, and, in lieu of such bond, Dickson and his father thereupon entered into an agreement with Provident Life and Trust Company of Philadelphia (now Provident Trust Company of Philadelphia), whereby that company agreed to hold the fund during the father's life, paying him the income, and to deliver it to Dickson at the father's death. Upon the death of his father, on May 28, 1915, Dickson, to whom the assets lodged with the trust company were delivered

in accordance with the agreement, voluntarily executed a deed of trust, dated July 8, 1915, transferring back to Provident Trust Company securities representing the two-thirds interest in which he had only a life estate under the terms of his mother's will, in trust to pay the income to himself during his life and upon his death to "hold and deliver the said assets in accordance with the terms of the will" of his mother, reciting as his reason for so doing that he deemed such arrangement expedient "for the benefit and protection of all parties in interest." By the terms of his mother's will it was expressly provided that Dickson should be entitled to hold and use the two-thirds interest left him for life only "without any security or liability to account" and that "his statement of accounts shall be accepted as final and binding on all the parties in interest."

Subsequent to the deed of 1915, this Court, in the case of *Cox v. Dickson,* 256 Pa. 510, had occasion to consider the validity of the exercise by Dickson's mother of her power of appointment, deciding that the appointment was void as violating the rule against perpetuities, since Dickson was not living at the time of the death of Erskine Hazard, donee of the power, and consequently that Fanny Hazard Dickson's entire share in the estate of Erskine Hazard passed absolutely to Dickson, under the provision in the will of Erskine Hazard giving her share to her children in default of appointment. Several years after this decision, Dickson, in 1921, filed a bill in equity (*Dickson v. Provident Life and Trust Company,* Court of Common Pleas No. 5 of Philadelphia County, June Term, 1921, No. 5348), asking that the court declare the return to him of the securities held by the trust company under the deed of July 8, 1915, and that the declaration of trust be cancelled. The nephews and nieces of Fanny Hazard Dickson intervened, contesting the right of Dickson to cancellation and, after hearing, the court filed an adjudication, concluding that Dickson was not entitled to the relief requested and that his bill

should be dismissed. No exceptions were ever filed by Dickson to the findings and conclusions of the court in that proceeding and, as a result, Provident Trust Company continued to administer the fund as before, paying the income to Dickson, until his adjudication in bankruptcy by the United States District Court for the Eastern District of Pennsylvania, on May 28, 1932. By order of the bankruptcy court, Dickson's life interest in the fund was exposed to sale at public auction and was purchased by Henry S. Drinker, Jr., who in turn transferred all his right, title and interest as such purchaser to Fidelity-Philadelphia Trust Company, on December 2, 1932, following Dickson's discharge in bankruptcy, in trust, subject to a spendthrift provision, to pay the income to Dickson for life and on his death to pay any unpaid balance to his wife, Janet L. B. Dickson. No interest in the fund other than the life interest was scheduled by Dickson in the bankruptcy proceeding.

On April 10, 1939, American Surety Company of New York, appellant, secured a judgment against Dickson in the sum of $8971.26 and on September 11, 1939, caused a writ of attachment sur judgment to issue, naming Provident Trust Company and Fidelity-Philadelphia Trust Company as garnishees. Interrogatories were filed to which the garnishees filed answers admitting the facts as above set forth but they denied that Dickson had any attachable interest in the fund and entered pleas of nulla bona. At the hearing on the issues so raised, the court suggested that final decision in the attachment proceeding be withheld pending adjudication, in an appropriate proceeding in equity, of the rights of persons having an alleged remainder interest in the fund, including Fanny Hazard Dickson's nephews and nieces. Appellant thereupon filed the present bill, in the nature of a bill to quiet title, claiming that Dickson remains absolute beneficial owner of the corpus, on the theory that the deed of 1915 was not intended to, and did not, create any new interests in the fund, its sole purpose being to furnish secu-

rity, in compliance with the Act of May 17, 1871, P. L. 269, for the protection of the persons entitled to receive the fund, on Dickson's death, under the terms of his mother's will as legally operative—a contention which loses much of its force when it is recalled that the will, of which Dickson was sole executor and with the terms of which he was at all times entirely familiar, expressly relieved him of all obligation to give security—and that the corpus is thus subject to attachment in the hands of the trustee. Answers were filed by John L. Cox et al., the nephews and nieces, and by Harold D. Saylor, Esquire, trustee ad litem for possible unborn children of Dickson, appellees, asking that the bill be dismissed on the ground that the question of title to the corpus was specifically adjudicated adversely to the contentions of appellant in the prior proceeding instituted by Dickson and that a relitigation of it by appellant in the present proceeding is precluded by the doctrine of res adjudicata. The trial judge, to whom the case was submitted on the pleadings and a stipulation of counsel, concluded in his adjudication that appellant was entitled to the relief prayed for, but upon a reconsideration of the issues by the court en banc, in the light of exceptions filed by appellees, this decision was unanimously reversed on the ground that the prior proceeding is res adjudicata, as contended by appellees, and a final decree was entered dismissing the bill.

As most recently stated in *Cameron Bank v. Aleppo Twp.*, 338 Pa. 300, 304: "To constitute res adjudicata there must be: (1) Identity in the thing sued for; (2) identity of the cause of action; (3) identity of persons and parties to the action; (4) identity of the quality in the persons for or against whom the claim is made." See also *Siegfried v. Boyd*, 237 Pa. 55, 59; *Bennett v. Erwin*, 325 Pa. 330, 333. Here appellant contends the requisites of "identity of the thing sued for" and "identity of persons and parties to the action" are lacking, and that the adjudication in the former litigation is not

res adjudicata of Dickson's rights in the principal of the fund in controversy for these reasons, as well as for the additional reason that at the time of the present suit no formal decree had ever been entered in that proceeding. As to Dickson's life interest in income, pur-chased by Drinker and by him made the subject of a spendthrift trust, as already stated, appellant very properly conceded in the court below that it is no longer subject to the claims of creditors, and that phase of the case is not before us on this appeal.

Appellants contention that the issue it now seeks to litigate, i.e., the legal effect of the deed of 1915, was not involved in the former litigation is predicated upon an erroneous assumption that the only question there raised or considered was whether the deed could be set aside on the ground that it was mistakenly executed. As appears from the record, the bill filed by Dickson in that proceeding, in addition to averring that the deed had been executed under a mistake, which he claimed constituted a mistake of fact, expressly averred also that *"the said Declaration of Trust amounts to no more than an appointment of the respondent as your orator's agent for the custody of the securities therein named, and for the collection of the income thereof, and that such appointment is, in its nature, revocable."* In their answer, the nephews and nieces, intervening defendants, denied that the deed was executed under a mistake of fact, averring that the error, if any, was a pure mistake of law, and averred further that the deed *"was voluntarily executed by the plaintiff, that it is by its terms irrevocable, and that thereunder interests in the principal conveyed thereby vested in the nieces and nephews of Fanny H. Dickson, including defendants."* At the hearing on the bill and answers, Dickson, acting as his own counsel, although he stated that he asked the court to find "principally" that he was entitled to the return of the fund on the ground of mistake, specifically pointed out that he also contended *"the facts and circumstances of the*

*case do not show any intention on my part to make any voluntary gift to these parties* (referring to the nephews and nieces)." The issue as to whether the legal effect of the deed of 1915 was the creation merely of a revocable agency, which is in substance the ground of the present bill, or the creation of a valid trust giving the nephews and nieces an enforceable contingent interest in the principal, was thus squarely raised and considered in the former proceeding, and the contention of appellant that it was not must be rejected as contrary to the record.

The argument that there is a lack of identity of parties is likewise unsound, in that it ignores the rule requiring such identity is subject to the qualification that in the absence of fraud or collusion those in privity with the parties to the record, including attaching creditors, are also bound. See *Bennett v. Erwin,* supra, 335; *Mengel v. Connecticut Fire Ins. Co.,* 5 Pa. Superior Ct. 491; *Fidelity Trust Co. v. New York Finance Co.,* 125 Fed. 275. This is not a case where the settlor has by the terms of the trust reserved to himself all the advantageous attributes of ownership, including power to dispose of the corpus by will, and hence *Nolan v. Nolan,* 218 Pa. 135, and *Patrick v. Bingaman,* 2 Pa. Superior Ct. 113, establishing that if this were the case creditors of the settlor could reach the assets, even though he himself could not, can have no possible application. The distinction between the two situations, so far as concerns the rights of attaching creditors, has heretofore been recognized by this Court in *Austin-Nichols & Co. v. Union Trust Co.,* 289 Pa. 341, as follows (pp. 346-47): "When a creditor makes use of attachment process, he thereby treats the contract by which the garnishee acquired possession of the fund in his hands as valid . . . His rights cannot rise higher than those which defendant had against the garnishee, and the liability of the latter is measured by his responsibility in case the debtor himself had brought an action to recover . . . The same principle applies when funds are held on special deposit, or in trust for the benefit of

third parties *(Burger v. Burger,* 135 Pa. 499; *Farmers & Mechanics Bank v. King,* 57 Pa. 202; *B. & O. R. R. Co. v. Kensington Land Co.,* 175 Pa. 95), though the settlor cannot put aside assets for his own use so as to deprive creditors of their rights therein: *Nolan v. Nolan,* 218 Pa. 135; *Patrick v. Bingaman,* 2 Pa. Superior Ct. 113." Other cases which must also be similarly distinguished are *Mackason's Appeal,* 42 Pa. 330, and *Mogridge's Estate,* 342 Pa. 308.

On appellant's final point, it is undoubtedly true as a general proposition that the doctrine of res adjudicata does not apply in the absence of a final judgment or decree: *Dougherty v. Coal & Navigation Co.,* 202 Pa. 635, 639; *Grear v. Buholz,* 66 Pa. Superior Ct. 380, 382; *Werry v. Sheldon,* 148 Pa. Superior Ct. 13, 18. As in the case of most general rules, however, there is at least one well-defined exception, namely, that the verdict of a jury or the finding of a chancellor may alone be binding if there are circumstances showing that the parties acquiesced in it. Here the circumstance that for a period of over eighteen years following the adjudication Provident Trust Company was permitted to possess and administer the fund in accordance with the terms of the deed of trust as before, and the fact that at no time during this entire period did Dickson make any further effort whatever to claim it as his own, coupled with his declaration in the bankruptcy proceeding that he had a life estate only in the fund, lead irresistibly and unavoidably to the conclusion that he abandoned the suit, thus eliminating the necessity for a final or formal decree: *Estep v. Hutchman,* 14 S. & R. 435; *Shaeffer v. Kreitzer,* 6 Binney 430; *Ludwig Co. v. Greene,* 88 Pa. Superior Ct. 137, 139; *Pollitz v. Schell,* 30 Fed. 421; *Hubbel v. Lankenau,* 63 Fed. 881; *Kannel v. Kennedy,* 94 Fed. (2d) 487.

In its brief the appellant states that in any event there remains in Dickson a reversionary interest, in case of his surviving all of the nephews and nieces and

336

his subsequent death without children or issue, and suggests that this interest may be subjected to its attachment. No such question was raised or passed upon in the court below, however, and we have given no consideration to it in disposing of the appeal.

Decree affirmed. Costs to be paid by appellant.