## Wilson Estate

Before Sinkler, P. J., Klein, Bolger, Hunter and Lefever, JJ.

*Jerome L. Markovitz*, and *James L. Stern*, for petitioners.

*Rowland C. Evans*, and *Abraham Wernick*, contra.

LEFEVER, J., March 30, 1951.—This case was heard by the court on the petition of the administrators c. t. a,. of the estate of Miriam B. Wilson, deceased, widow of John C. Wilson, decedent in this case; the answer of

respondents, who are decedent's executors and children (or their personal representatives), and the reply of petitioners to new matter in the answer.

The petition averred that decedent died on January 9, 1931, survived by the widow and by five children of a former marriage; that prior to their marriage decedent and the widow entered into an antenuptial agreement which, inter alia, provided that the widow would accept in lieu of her dower right one sixth of decedent's personal estate, absolutely, and a life estate in one sixth of his real estate (with certain real estate excepted); that "by reason of the management of said estate, all of the assets of personal property were distributed and utilized to pay debts and liens against the real estate"; that in prior litigation this court and the Supreme Court ruled that the widow was "an heir" and, therefore, the widow is now entitled to a "one-sixth interest in the real estate owned by John C. Wilson and the rents and profits which have been paid thereon since the time of his death"; that the widow's rights to the real estate have never been adjudicated; that a bill in equity to determine these rights was filed in Philadelphia Common Pleas Court No. 2 as of December term, 1945, no. 3254; that the common pleas court dismissed that bill on the ground that the prior decision of this court and the Supreme Court was res adjudicata of the issues in the case; that the decision of the common pleas court was reversed by the Supreme Court on the ground that the common pleas court did not have jurisdiction of the controversy, and that this petition was accordingly filed. The petition prayed this court to order respondents to file a complete accounting with regard to all receipts and disbursements in connection with decedent's real estate; to order respondents to pay over one third of the net income from the real estate to petitioners; to decree that petition-

ers "are entitled to a one sixth interest in the real estate owned by John C. Wilson at the time of his death"; to declare respondents to be trustees of all real estate from which a lien had been divested by reason of payment of debts out of the personal estate, and to order that one sixth thereof, namely, $43,387.50, be paid to respondents.

Respondents, as new matter, pleaded res adjudicata, laches, and estoppel. Petitioners filed a reply to the new matter, denying that they were barred by reason of res adjudicata, laches, and estoppel.

In view of the fact that the reply contains only conclusions of law and in an effort finally to close this estate and to conclude the protracted, bitter, and vexatious litigation which has flowed from it, we have carefully reviewed the entire record, including the various hearings in this court, the hearings before Philadelphia Common Pleas No. 2, and the two appeals to the Supreme Court of Pennsylvania. We are now deciding this case as a matter of law on the petition, answer and reply to new matter in the light of the entire record of this case.

In addition to the facts appearing in the petition which we have heretofore summarized, it appears that:

Decedent left a will which appointed executors but did not dispose of his estate, consisting of personalty, inventoried at $260,325, and real estate of substantial value. The widow took no steps against the real estate but two banks which had large claims against the estate filed suits within the required one-year statutory period. Huge losses in the values of securities of the estate and large claims, arising principally through an assessment on estate-owned stock in a National bank which closed, reduced the estate to insolvency. In this situation the widow, on July 9, 1932, entered into an agreement with respondents and others wherein she confirmed the antenuptial agreement, agreed to

waive any surcharge claims against the executors, and agreed to accept 114 shares of the capital stock of the American Dredging Company owned by the estate. The stock was transferred and delivered to her pursuant to the agreement.

The final account of the executors was filed in this court on January 13, 1932. The executors took no action with regard to this account and on May 20, 1934, it was returned to the files in the clerk's office with the notation: "Not Audited—Stearne, J.". On October 25, 1939, an "Amended First and Final Account" was filed by the executors. Judge Stearne referred this to Henry C. Remick, Esq., as auditor; and upon his entry into the military service, Raymond M. Remick, Esq., was substituted as auditor. Included in the account was a "Real Estate Account" showing income, disbursements, and a net balance of $9,251.67; this balance was merged with the account of personalty and the account of proceeds of real estate to produce an over-all net balance of $12,783.98 which, as appeared in the "Distribution Account", had been distributed to the widow. In short, this account showed that the widow had received the entire net balance of personalty, income from personalty, proceeds of real estate, and income from real estate received to the date the account was filed, viz., October 25, 1939.

On or about January 19, 1940, the widow filed a petition in this court for issuance of a citation against decedent's children and others. The petition was founded on the alleged impropriety of the use of the personalty to pay other creditors on the theory that the widow was also a creditor to the extent of one sixth of the gross personal estate, and should have shared the personalty with the other creditors. It was also founded on the theory that the real estate descending to decedent's heirs was exonerated from the liens of creditors who had filed suit within the one-year period

and had been paid out of this personalty. The petition, therefore, prayed for "such order against said heirs and against the real estate which they received, discharged of the judgment debt as aforesaid, as will do justice in equity between all of the parties", "to the end that all of the said parties may be before the court and be subject to all orders and decrees that your honorable court may deem necessary to make a proportionate distribution of the estate among those by law entitled thereto". A citation was issued pursuant to this petition. An answer thereto was filed denying that the widow had any interest in the realty other than a life estate in one sixth thereof. This court appointed Henry C. Remick as master, and later appointed Raymond M. Remick as substituted master. The petition and answer were referred to the master. Hearings were held thereon.

On February 12, 1940, the widow died and her administrators, c. t. a., were substituted as parties of record in this case.

Raymond M. Remick, as master, ruled that the widow was a creditor of decedent's estate but that by reason of her construction of the antenuptial contract she had over a course of years treated herself as "the widow and an heir and induced others, more specifically the executors of the estate and other creditors, to deal with her as such". He concluded that "by her acts and deeds, as well as those of her counsel during the nine years immediately succeeding decedent's death she became estopped and barred by her own laches from contending to the detriment of the executors and other creditors that she had any rights as a creditor of the estate . . ." He recommended, therefore, that the petition be dismissed.

Raymond M. Remick, as auditor, confirmed the executors' account. Evidently bearing in mind her prayer in the petition for an "order against said heirs and

against the real estate", he concluded his sweeping decision as auditor:

"Therefore, the claim of Miriam D. Wilson, through her administrators, c. t. a., whether it be that of widow or heir or creditor, is dismissed."

Exceptions to the reports of Raymond M. Remick, as master and auditor, were filed with this court. These exceptions were dismissed and the auditor's and master's reports were approved: Wilson Estate, 44 D. & C. 559. The Supreme Court affirmed the decision of this court: Wilson Estate, 346 Pa. 562.

Subsequently petitioners filed their bill in equity in the Philadelphia Common Pleas Court No. 2. This bill was based upon the erroneous supposition that this court and the Supreme Court had adjudged the widow to be "an heir" and hence entitled to a present share of decedent's real estate or, in the alternative, that the action of the executors in paying the creditors out of personalty benefited decedent's children at the expense of the widow, with the result that her successors were entitled to a pro rata share in the realty freed of the encumbrances in this fashion.

In a carefully considered and searching opinion, President Judge Gordon decided that the former decision of this court, as affirmed by the Supreme Court, was res adjudicata of the issue involved. He, therefore, dismissed the bill. On appeal, the Supreme Court reversed this decision solely on the ground that the jurisdiction was in the orphans' court and not in the common pleas court: Marcer et al., admrs., v. Wilson et al., 360 Pa. 534. Speaking for the Supreme Court, Mr. Justice Jones commented with regard to Judge Gordon's opinion:

"While the *result so arrived at seems manifestly correct*, unfortunately for a definitive disposition of the controversy, we do not now reach the merits in the view we take of the present litigation. Whatever rights

Mrs. Wilson had (and her estate succeeded to) in her deceased husband's estate existed by virtue of her status as an heir of her husband *to the extent of her limited interest specified in the antenuptial agreement"*. (Italics supplied.)

It is well settled that " 'To constitute res adjudicata, there must be: (1) identity in the thing sued for; (2) identity in the cause of action; (3) identity of persons and parties to the action; (4) identity of the quality in the persons for or against whom the claim is made' ": American Surety Company of New York v. Dickson et al., 345 Pa. 328, 332 (quoting Cameron Bank v. Aleppo Township, 338 Pa. 300, 304). These tests are specifically met in the instant case. There is identity of all of the requisites.

This court and the Supreme Court heretofore have adjudicated all of the widow's rights as a creditor in decedent's personalty. (Petitioners' counsel conceded this at the bar of this court.) Under the express terms of the antenuptial contract and the agreement of July 9, 1932, the only right of the widow in the real estate was a right to income for life from one sixth of the estate. Income from the real estate from the time of decedent's death until October 25, 1939, was included in the supplemental account of the executors and merged with the general account and constituted the major portion of the net balance of the estate which was paid to the widow as appeared in the "Distribution Account". As stated in respondents' brief, the appearance slip of counsel for the widow at the audit claimed this interest in the income from real estate. The account was finally confirmed by this court. Consequently, with the possible exception of one sixth of the income received from real estate from October 25, 1939, to her death on February 12, 1940 (which is de minimis), the widow has received all of the net income from decedent's real estate during her lifetime.

This is all that she was entitled to under the antenuptial contract and the agreement of July 9, 1932. It appears, therefore, that on the merits the widow and her successors have no claim.

Irrespective of this conclusion, however, the decision of this court approving and adopting the reports of the auditor and the master, which was affirmed by the Supreme Court of Pennsylvania, is res adjudicata of the issues here raised. We expressly base our present decision on this ground. We are fortified in our decision by the able opinion of Judge Gordon, reaching the same conclusion, and the implication of the above-quoted language of Mr. Justice Jones in the Supreme Court opinion.

The petition is therefore dismissed.