Evans *v.* Moffat, Appellant.

560

Argued January 15, 1957. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, JONES and COHEN, JJ.

*Bernard G. Segal*, with him *Edward W. Mullinix, James W. Scanlon, Matthew D. Mackie, J. Hayden Oliver, Wm. A. Schnader,* and *Schnader, Harrison, Segal & Lewis,* for appellants.

*Raymond T. Law*, with him *John R. Lenahan,* for appellees.

OPINION BY MR. CHIEF JUSTICE JONES, April 26, 1957:

The twenty-five separate actions in trespass here involved were instituted by the respective plaintiffs to recover damages for injury to their several properties allegedly caused by noxious fumes emanating from mine refuse dumps created and maintained by the defendant, Moffat Coal Company, a co-partnership, on land leased from Glen Alden Coal Company in the vi-

cinity of the plaintiffs' properties. The cases were consolidated for trial to the court below, sitting without a jury, under an express agreement of submission by counsel for the parties in accordance with the provisions of the Act of April 22, 1874, P. L. 109, as amended, 12 PS §688 et seq. All that these appeals bring up for review is the action of the court below in opening judgments in favor of the defendants and permitting the plaintiffs to file exceptions to the trial court's findings, conclusions and judgment *nisi*.

A companion case in the same court (*Waschak v. Moffat,* infra) had been tried earlier to a judge and jury and had resulted in a money verdict in favor of the plaintiffs, against the defendants. Upon overruling Moffat Coal Company's after-verdict motions, the court entered judgment against that company on the verdict but entered judgment n.o.v. in favor of Glen Alden Coal Company, the co-defendant. No appeal was taken from the judgment for Glen Alden Coal Company which consequently became final.

Moffat Coal Company appealed the judgment against it ($1,250.) and the Superior Court unanimously affirmed: see 173 Pa. Superior Ct. 209, 96 A. 2d 163. An allocatur was granted, and, after argument of the appeal, a majority of this court reversed and entered judgment n.o.v. for the appellant defendants: see *Waschak v. Moffat,* 379 Pa. 441, 109 A. 2d 310. In so doing, this court cited as pertinent authority the rule relative to liability in the case of a private nuisance as contained in the Restatement, Torts, §822(d), and held, as a matter of law, that "the invasion of the plaintiffs' land was clearly *not intentional*" and that, "even if it were, . . . it was not unreasonable". Actually, the case had not been tried on the basis of the indicia of responsibility as specified in the Restatement. In fact, the point had not been argued or even

raised in the trial court at any time and was first injected into the case by the defendants on their appeal to the Superior Court which court, upon consideration, rejected the rule as of no applicability to the proven facts of the case.

After the record in the *Waschak* case had been remanded to the court below, the defendants were permitted to file in the instant actions amended answers to the complaints, raising the affirmative defense of *res judicata* on the basis of this court's decision in the *Waschak* case. At the subsequent trial of these cases to the court without a jury, the testimony in the *Waschak* case was, by pre-trial agreement and order, submitted to the trial judge as testimony on the question of the defendants' liability.

In passing upon the evidence applicable to the cases involved in these appeals, the learned trial judge found that the plaintiffs' properties had been substantially interfered with by the defendants and that the invasion of the plaintiffs' property rights was intentional. The court was of the further opinion that this was an ultimate inference of fact supported by the basic findings as to the defendants' knowledge of the attendant physical conditions relative to the dumps and their likely deleterious effects. In support of the view that the finding of intentional invasion was a conclusion of fact, the trial judge cited and quoted from Restatement, Torts, §825(b), as follows: "An invasion of another's interest in the use and enjoyment of land is intentional when the actor . . . (b) knows that it is resulting or is substantially certain to result from his conduct." However, the court was also of the opinion that the decision in the *Waschak* case was *res judicata* of the issues involved in the instant cases. Thereupon, the court entered judgments *nisi* on February 6, 1956, in favor of the defendants and against the plaintiffs

and included also a compulsory nonsuit as to the co-defendant Glen Alden Coal Company.

On February 29, 1956—just 23 days after entry of the judgment *nisi*—the defendants by their local counsel filed praecipes causing final judgments to be entered by the prothonotary in favor of the defendants and against the plaintiffs.

Three days later (viz., March 2, 1956), the plaintiffs petitioned the court to open the judgments and permit them to file exceptions to the court's adjudications and judgments *nisi* of February 6th, a copy of the proposed exceptions being attached, as an exhibit, to the plaintiffs' petitions to open. The court granted rules on the petitions which, after argument, were made absolute. The judgments were accordingly opened and the plaintiffs permitted to file their exceptions to the adjudications and judgments *nisi*. It is that action by the court below which is the subject matter of the defendants' present appeals.

In reliance on Rule 1048 of the Pennsylvania Rules of Civil Procedure (381 Pa. xxix), the appellants contend that the judgments were entered timely and, therefore, should not have been opened because further proceedings in these cases would be futile. With that contention, we are unable to agree either as to its premise or its conclusion.

Section 2 of the Act of 1874, under which the cases were submitted by agreement of the parties for the trial court's decision without a jury, expressly allowed thirty days after notice of the decision for the filing of exceptions to the court's findings and conclusions. It is true that Rule 1048 of the Pa. R. C. P., which relates to trial without jury in trespass actions, prescribes by subsection (d) twenty days for the filing of exceptions to the court's decision and that subsection (f) suspended section 2 of the Act of 1874, cit. supra

(i.e., the thirty-day provision for exceptions), insofar as it was inconsistent with Rule 1048. Rule 1048 became effective upon its promulgation on April 26, 1955, and was expressly made applicable to all pending actions which the instant suits then were. But, the Rule was notably not made applicable to extant agreements of submission expressly executed in pursuance of the Act of 1874, supra. Nor can the Rules be reasonably construed as having so intended.

At the time Rule 1048 was adopted, the executed agreements for the submission of these cases for trial by the court without a jury were already on file and plainly evidenced the intent of the parties that they should have thirty days after the court's decision within which to file exceptions. These agreements were never changed by any action of the parties. Had the parties, or any of them, intended, subsequent to the adoption of Rule 1048, that the time for filing exceptions should be shortened from thirty to twenty days, they should have expressly so indicated by some affirmative act. The learned court below correctly concluded from the conduct of the parties in the premises that their intent continued to be that they should have thirty days for the filing of exceptions to the court's decision. The judgments were, therefore, entered prematurely.

What we have thus concluded as the intent of the parties conforms with what the law imputes in the circumstances. In *Beaver County Building & Loan Association v. Winowich,* 323 Pa. 483, 489, 187 A. 481, Mr. Justice (later Chief Justice) STERN said that "In determining what constitutes the obligation of a contract, no principle is more firmly established than that the laws which were in force at the time and place of the making of the contract enter into its obligation with the same effect as if expressly incorporated

in its terms [citing cases]." The foregoing statement was later quoted in support of the proposition that "When the parties entered into the agreement to arbitrate they became bound by the Arbitration Act of 1927, and that very act supplied the 'power to substitute another arbitrator' upon the happening of the contingency which happened here": see *J. M. Davis Company v. Shaler Township*, 332 Pa. 134, 139-140, 2 A. 2d 708. Again, in *Fischer & Porter Company v. Porter*, 364 Pa. 495, 501, 72 A. 2d 98, we quoted with approval from the *Winowich* case, as above, and further said that "the terms of a contract requiring the application of a statute are to be construed according to their meaning as used in the statute."

Even had the effect of Rule 1048 actually been to shorten the time for exceptions under an agreement of submission already in force under the Act of 1874, the court below could not have been charged with an abuse of discretion in opening the judgments upon the plaintiffs' prompt applications therefor when they had understood that they had thirty days for the filing of exceptions.

So much would suffice for answer to what these appeals brought up for review except for the appellants' argument that the decision in *Waschak v. Moffat*, supra, rules these cases and that it would therefore be a futile gesture to proceed further with them. Since appellants have vigorously pressed this contention—devoting to it the greater part of their brief in this court—it becomes necessary that we treat with it lest an incorrect inference should be drawn were we to pass over it in silence.

The decision in the *Waschak* case is by no means *res judicata* of the issues in the cases now before us. At least one, if not more, of the requisites of the doctrine is absent. Specifically, there is a patent want of

identity of parties plaintiff in the *Waschak* and other cases. In *Siegfried v. Boyd*, 237 Pa. 55, 59, 85 A. 72, it was plainly declared that,—"In order to make a matter res adjudicata there must be a concurrence of the four following conditions: (1) Identity in the thing sued for; (2) identity of the cause of action; (3) identity of persons and of parties to the action; (4) identity of the quality in the persons for or against whom the claim is made . . ." The foregoing category of the requirements for *res judicata* has since been quoted or cited with approval many times. See *Commonwealth ex rel. v. Kelly*, 287 Pa. 139, 144, 134 A. 514; *Woodburn v. Pennsylvania Railroad Co.*, 294 Pa. 174, 176, 144 A. 93; *West Leechburg Borough v. Allegheny Township School Directors*, 300 Pa. 73, 78, 150 A. 88; *Thommen v. Aldine Trust Co.*, 302 Pa. 409, 416, 153 A. 750; *Bennett v. Erwin*, 325 Pa. 330, 333, 189 A. 675; *Long v. Daylor*, 327 Pa. 484, 489, 194 A. 495; *American Surety Company of New York v. Dickson*, 345 Pa. 328, 332, 28 A. 2d 316; *Gordon, Secretary of Banking v. Hartford Sterling Company*, 350 Pa. 277, 285, 38 A. 2d 229; *Jones v. Costlow*, 354 Pa. 245, 252, 47 A. 2d 259; *Fisher Building Permit Case*, 355 Pa. 364, 367, 49 A. 2d 626. In *Burke v. Pittsburgh Limestone Corp.*, 375 Pa. 390, 395, 100 A. 2d 595, we recently summarized the doctrine of *res judicata* as follows: "A final valid judgment upon the merits by a court of competent jurisdiction bars any future suit between the same parties or their privies, on the same cause of action. Identity of the thing sued for, the causes of action, of the parties to the action, and of the quality or capacity of the parties suing or sued, is essential to the application of the doctrine [citing *Fisher Building Permit Case,* supra]."

So far as the decision in the *Waschak* case has any bearing on the instant actions, it is at most *stare de-*

*cisis* as to the applicability of §822(d) of the Restatement, Torts. It does not constitute an adjudication of the facts at issue which, in each case, are for the court below, as the fact-finder, to resolve as well as determine preliminarily what are matters of fact as distinguished from matters of law.

The respective orders opening the several judgments are affirmed and the records remanded to the court below for further proceedings.

----

CONCURRING OPINION BY MR. JUSTICE BELL:

I concur, for purely technical reasons, in opening the judgment, but vigorously disagree with the majority opinion. In view of the fact that this Court has affirmed the action of the lower Court in opening the judgment, it was entirely unnecessary to undermine the case of *Waschak v. Moffat,* 379 Pa. 441, 109 A. 2d 310. It seems to me to be especially inadvisable since the present majority opinion serves to cast doubt and confusion on an issue which is (practically) certain to be hereafter appealed to this Court *on its merits.*

The majority opinion, if I correctly understand it, merely reiterates and adopts all the contentions which were made and *which this Court rejected in the Waschak case,* supra.

The majority opinion states: "The testimony in the *Waschak* case was, by pretrial agreement and order, submitted to the trial judge as testimony on the question of the defendants' liability." It is crystal clear that the testimony and the facts in the present cases and in the *Waschak* case are identical and on such a record—unless the *Waschak* case (which, as we shall see, was approved by this Court only a few months

ago) is reversed—the plaintiffs should have no illusions as to the final outcome of their cases when a decision is rendered on the merits. The *Waschak* case is, I repeat, identical with and under the principle of *stare decisis* is unquestionably determinative of the identical issues which these plaintiffs have raised in the present identical cases; and *the Waschak case specifically bars recovery against these defendants.*

In *Waschak v. Moffat,* supra, this Court held *as a matter of law** that the invasion of plaintiff's land by gas and fumes was clearly not intentional nor unreasonable, *as those terms are used in the law.* The Court said (pages 447-455): "An invasion of an interest may be intentional or unintentional. If an owner of land erects a factory upon it, which he operates, his act is, of course, intentional when he ignites fires under the boilers which emit smoke or fumes and operate noisy machinery. Such intentional operations may become a nuisance and cause damage to an adjoining property, depending upon the method of operation, location of the premises and surrounding circumstances. Under varying conditions the harm caused by the emission of offensive odors, noises, fumes, violations, etc., must be weighed against the utility of the operation. And even where the invasion of property rights is unintentional, and without negligence, if the activity is ultrahazardous there will be imposed an absolute liability for damages. Thus in a blasting operation, recovery was had where the damage was due solely to vibration and concussion: Federoff v. Harrison Construction Co., 362 Pa. 181, 66 A. 2d 817. . . .

"*Even if the reasonableness of the defendants' use of their property had been the sole consideration, there could be no recovery here.* Chief Justice FRAZER, in

---

* Italics throughout, ours.

Harris v. Susquehanna Collieries Co., 304 Pa. 550, 156 A. 159, quoting from a previous case, said (p. 558): '. . . As said in Pa. Coal Co. v. Sanderson, 113 Pa. 126, 158: "The plaintiffs knew, when they purchased their property, that they were in a mining region; they were in a [district] born of mining operations, and which had become rich and populous as a result thereof. . . ." '
. . .

" 'Without smoke, Pittsburgh would have remained a very pretty village.' . . . 'A coal mining company is not responsible in trespass for damage caused to plaintiff's property by smoke, dust and gases from a burning "slate dump" on defendant's property, the material having been placed on the dump in the course of operation of defendant's mine and the fire having originated from spontaneous combustion, if there is no known method by which such fires can be extinguished.' . . .

"Chief Justice MAXEY said in Hannum v. Gruber, 346 Pa. 417, 423, 31 A. 2d 99, 'What is reasonable is sometimes a question of law, and at other times, a question of fact.' *Under the undisputed facts in this case the question is one of law.* . .

"The Superior Court correctly refused to adopt the doctrine of absolute nuisance. It cited the Restatement. Judge HIRT said: '. . . Section 822 of the Restatement, Torts, sets forth some of the tests for determining liability resulting from a private nuisance . . .' (Italics supplied) It is our view that Section 822 comprehensively encompasses the entire statement of principles of liability and is not restricted merely to some of them. We do not agree with the statement: . . .

"In applying the rule of the Restatement, Torts, Sec. 822 (d), *it is evident the invasion of plaintiffs' land was clearly not intentional. And even if it were, for the reasons above stated, it was not unreasonable.*

On the contrary, since the emission of gases was not caused by any act of defendants and arose merely from the normal and customary use of their land without negligence, recklessness or ultrahazardous conduct, *it was wholly unintentional, and no liability may therefore be imposed upon defendants.*

"The judgment is reversed and is here entered in favor of defendants non obstante veredicto."

The *Waschak* case was reaffirmed a few months ago, to wit, on November 12, 1956, by a unanimous court in *Burr v. Eidemiller, Inc.*, 386 Pa. 416, 420.

In *Burtt Will*, 353 Pa. 217, 44 A. 2d 670, the Court said (page 231) : "The doctrine of *stare decisis* still prevails in Pennsylvania ... This Court has always rigidly adhered to the rule of *stare decisis*. '. . . The doctrine of *stare decisis* is not confined to cases involving "rules of property." See Kirkpatrick v. Commonwealth, 31 Pa. 198, 210, and Commonwealth v. National Oil Co., Ltd., supra, "Stare decisis simply declares that, for the sake of certainty, a conclusion reached in one case should be applied to those which follow, if the facts are substantially the same, even though the parties may be different": Heisler v. Thomas Colliery Co., 274 Pa. 448, 452, 118 A. 394.' . . . '. . . Otherwise the law would become the mere football of the successively changing personnel of the court, and "the knowne certaintie of the law", which Lord Coke so wisely said "is the safetie of all" would be utterly destroyed.' "

If a majority of this Court wish to abrogate or to ignore at will the doctrine or principle of *stare decisis* that is their privilege, but I must protest opinions or decisions which, as here, effectually undermine, demolish and pulverize, but leave still breathing, prior decisions of this Court. If we intend to reverse or no longer follow a prior decision or established principles, we should do so directly, clearly and specifically,

instead of indirectly. The latter method leaves the law in a state of confusion. It perplexes Bench and Bar alike and it produces much irritating and expensive litigation, all of which the direct method of specific reversal would completely eliminate.