**Edith R. JONES**

v.

**SELDON'S FURNITURE WAREHOUSE, INC., et al.**

**Civ. A. No. 417–72–R.**

United States District Court,
E. D. Virginia,
Richmond Division.

April 25, 1973.

John M. Levy, Neighborhood Legal Aid Society, Richmond, Va., for plaintiff.

G. Clinton Moore, Richmond, Va., for defendants.

## MEMORANDUM

MERHIGE, District Judge.

The sole remaining question in this action under the Truth in Lending Act,

15 U.S.C. § 1601 et seq., is whether plaintiff's Legal Aid attorneys are entitled to attorneys' fees following plaintiff's recovery on the merits. See the Court's Order and Memorandum of February 13, 1973. That question is now ready for disposition.

The Court recently examined at length the issue of the propriety of recovery by Legal Aid in another action, Woolfolk v. Brown, 358 F.Supp. 524 (E.D.Va.1973), and deems repetition of its reasoning unnecessary here. For these purposes a restatement of the Court's approach to the problem and an appropriate application of same in this matter will suffice.

The first inquiry is whether recovery would be merited were the attorneys private. That question is readily answered in the affirmative in this matter by the Act itself, 15 U.S.C. § 1640, which provides for an award of reasonable attorney's fees as determined by the Court.

The second inquiry is directed to attorneys seeking the award. In *Woolfolk* the Court reasoned that in view of Legal Aid's prepaid sponsorship, which enabled its clients to bring suit without direct legal cost, attorneys' fees *qua* compensation were unmerited. The Court did note, however, that certain circumstances may merit attorneys' fees, as where the Congress has stated an intent, or legal precedent so states, that an award serves one of two purposes:

1. That violators of a public policy and not the public or victims be shouldered with the costs of enforcing said policy.

2. That an award of attorney's fees stimulates private enforcement of the public policy by encouraging the bringing of suits otherwise unprofitable to the Bar.[1]

In essence this further analysis, which looks beyond the question of receipt of payment for services from the attorney's viewpoint, is premised upon the recognition that in certain instances conduct redressed in litigation is of so serious a nature with respect to the public welfare that the full burden of enforcement must be shifted to those whose conduct endangers the public.

Unquestionably the application of these considerations is the exception rather than the rule. Two common legal areas where they are found, cited correctly by the plaintiff, are in antitrust cases, see Union Leader Corp. v. Newspapers of New England, 218 F.Supp. 490 (D.Mass. 1963), and in Fair Labor Standards Act cases, see Wright v. Carrigg, 275 F.2d 448 (4th Cir. 1960). Further, the Court is persuaded that Truth-in-Lending Act cases merit similar consideration.

Judge Frankel in Ratner v. Chemical Bank, 329 F.Supp. 270, 280–281 (S.D.N.Y.1971), has expressly stated his interpretation of the attorneys' fees section of the Act, which he finds designed to promote private litigation. This Court agrees. Congressional intent with regard to the importance of private enforcement is clear from legislative history. See 1968 U.S.Code and Congressional Administrative News, at 1976. Moreover, legislative history is expressive of the need for a strong protective public policy with regard to credit transactions. *Id*, at p. 1962, et seq. For both reasons the Court is of the opinion that the attorneys' fees provision must be viewed with an eye toward the public policy as expressed in and codified by the Act.

If, therefore, fees are awarded to Legal Aid in this and other cases following

---

1. It is also arguable that shifting of the burden of costs may fulfill a punitive purpose, a contention which finds some support in the anti-trust area. See Farmington Dowel Products Co. v. Forster Mfg. Co., 421 F.2d 61, 90 (1st Cir. 1970). The Court has some conceptual difficulty, however, in applying the label of punishment to attorneys' fees, especially where punitive damages are available. See Sperry Rand v. E. C. I., (E.D.Va.1973). However, the punitive theory appears to be expressive of the shouldering of costs concept, *supra*.

the reasoning here espoused, two results will flow from that award:

1. Legal Aid will find its coffers supplemented.

2. Creditors will be placed on notice that consumers will have greater access to help from legal services projects, which by virtue of an award of fees might be freer to allocate their time to consumer credit cases. This in turn may more effectively influence creditors to avoid running afoul of the law.

 The first result, while legally unnecessary in view of the Court's conclusion with regard to attorneys' fees *qua* compensation,[2] is outweighed by the importance of the second result which the Court finds to be consistent with the purposes of this legislation. Accordingly, in view of the history, purpose and scope of the consumer credit legislation, the Court concludes that an award of attorneys' fees to Legal Aid is proper.

A third line of inquiry with respect to attorneys' fees was directed by the Court in *Woolfolk, supra,* to the nature of the party from whom fees were sought to be recovered. In *Woolfolk* the Court concluded that fees could only be recovered, in practicality, from the welfare clients themselves. That conclusion militated against the award. In the present matter, however, no such problem exists: Recovery will be made against the wrongdoer directly.

For the reasons assigned, attorneys' fees shall be awarded to the Neighborhood Legal Aid Society for their work in this matter. In acordance with the Court's usual practice, counsel will be directed to attempt to agree on an appropriate sum and to submit any such agreement to the Court. In the absence of an agreement, the Court will set the matter for hearing upon motion of either party.

An order shall issue.

---

2. The Court does not hereby express an opinion as to the value of legal aid services. Undoubtedly many would view this support of legal services as a desirable "side effect." However, any benefit gained by Legal Aid is not within the purview of the statute and therefore is unsupportive of the result here enunciated. The Court is also mindful of Legal Aid's policy of non-involvement in fee generating cases. See ICCH Pov. L.Rep. ¶ 6700.35, and Buford v. American Finance Co., 333 F.Supp. 1243 (N. D.Ga.1971), where the District Court withheld an award because of the local Legal Aid's policy not to accept fees.