331 A.2d 424
**Marc Lincoln MARKS, Appellant,**

**v.**

**BELL TELEPHONE COMPANY OF PENNSYLVANIA**

Supreme Court of Pennsylvania.

Argued Nov. 18, 1974.

Decided Jan. 27, 1975.

Rehearing Denied Feb. 28, 1975.

Herman M. Rodgers, Rodgers, Marks & Perfilio, Sharon, for appellant.

Jerome J. Shestack, Michael J. Mangan, Schnader, Harrison, Segal & Lewis, Philadelphia, for Bell Telephone Co.

John J. Regule, Sharon, for City of Sharon.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

Appellant brought this action in equity to enforce his rights under the Pennsylvania Anti-Wire Tap Act.[1]

---

1. Act of July 16, 1957, P.L. 956, § 1, 18 P.S. § 3742 (Supp.1974):
   "No person shall intercept a communication by telephone or telegraph without permission of the parties to such communication. No person shall install or employ any device for overhearing or recording communications passing through a telephone or telegraph line with intent to intercept a communication in violation of this act. No person shall divulge or use the contents or purport of a communication intercepted in violation of this act. Whoever wilfully violates or aids, abets or procures a violation of this act is guilty of a misdemeanor, and shall be punishable by imprisonment of not more than one year, or by fine of not more than five thousand dollars ($5000), or both, and shall be liable to any person whose communication is unlawfully intercepted or divulged for treble the amount of any damage resulting from such unlawful interception, divulgence or use, but in no event less than one hundred dollars ($100) and a reasonable attorney's fee. The term 'person' includes natural persons, business associations, partnerships, corporations, or other legal entities, and persons acting or purporting to act for, or in behalf of, any government or subdivisions thereof, whether Federal, State or local. The term 'divulge' includes divulgence to a fellow employe or official in government or private enterprise or in a judicial, administrative, legislative

This proceeding raises important questions regarding the remedies available for a violation of the Act as well as the responsibilities of telephone carriers under the Act.

The events leading to this appeal began in October, 1972, when the City of Sharon, Pennsylvania, installed a telephone recording system at its police department headquarters. The system, connected to all three listed department telephone numbers, automatically recorded all calls, both incoming and outgoing, conducted on police department telephones. It was structured so that the desk officer could not disengage it if a party to the communication objected to the interception.

To render this recording system compatible with the telephone system, the city requested that the Bell Telephone Company of Pennsylvania install a device called a "recorder connector." This device, which is interposed between the recorder and the telephone lines, protects Bell Telephone's equipment and employees from "voltage surges" caused by the recording system. In compliance with its tariffs, Bell installed the "connector." [2]

On November 24, 1972, appellant, an attorney practicing in Sharon, apparently received a message asking him to call a client held in custody at police headquarters. In response to this message, appellant telephoned the police department. While speaking to the client's mother, who was also at the police station, an unusual noise on the

or other proceeding. Except as proof in a suit or prosecution for a violation of this act, no evidence obtained as a result of an unlawful interception shall be admissible in any such proceeding. Nothing in this act shall be interpreted to apply to acts done by personnel of any telephone or telegraph carrier in the performance of their duties in connection with the construction, maintenance or operation of a telephone or telegraph system."

Subsequent to the events that resulted in this proceeding, this statute was repealed and replaced by 18 Pa.C.S. §§ 5701–5704 (1973). The provisions of these sections of the new Crimes Code are virtually identical to those of the 1957 Act.

2. The Bell Telephone Company of Pennsylvania, Local General Tariff, Pa.P.U.C. No. 1, § 31(H)4(a).

telephone line caused appellant to suspect the police were recording the conversation. He immediately asked to speak with the officer in charge, who confirmed his suspicions. Appellant requested that the interception stop but was informed that the officer could do nothing to terminate the interception. Later that day, the client, using a police department telephone, returned appellant's call. This conversation was also monitored over appellant's objections.

Appellant repeatedly demanded that the interception and recording halt. The police department refused. On November 27, 1972, appellant contacted Bell Telephone Company requesting that it cease its participation in the interception and recording by removing the "connector." This demand was also refused.

On November 28, 1972, appellant filed a complaint in equity in the court of common pleas seeking 1) preliminary and permanent injunctions prohibiting the city and Bell Telephone from intercepting and recording calls made by all individuals to or from police headquarters, 2) compensatory damages of $25,000 and punitive damages of $350,000 from Bell Telephone, and 3) compensatory damages of one dollar and punitive damages of $75,000 from the city. The trial court, without hearing evidence, denied appellant's motion for a preliminary injunction. Appellant appealed to this Court and we vacated the equity court's decree and remanded for an evidentiary hearing. On remand, the court, after a hearing, again refused to issue a preliminary injunction. Appellant appealed to this Court and, because the city stated that the recorder had been and would remain disconnected pending the outcome of the litigation, we affirmed the trial court's decree. *Marks v. Bell Telephone Co.*, 450 Pa. 542, 301 A.2d 373 (1973).

In April, 1973, after conducting further hearings, the court, relying upon our decisions in *Commonwealth v. Papsyzcki*, 442 Pa. 234, 275 A.2d 28 (1971), and *Com-*

*monwealth v. Murray,* 423 Pa. 37, 223 A.2d 102 (1966), held that Sharon's monitoring system violated the Pennsylvania Anti-Wire Tap Act. The court ordered Sharon to terminate its interception of appellant's calls but awarded no damages. The court also concluded that Bell Telephone had not violated the Act.

■ Appellant filed exceptions protesting, inter alia, 1) the decree in favor of Bell Telephone, 2) the court's failure to award damages, and 3) the court's failure to enjoin all use of the recording system. These exceptions were denied and this appeal ensued.[3]

## I. LIABILITY OF BELL TELEPHONE

Appellant argues that Bell Telephone violated the Anti-Wire Tap Act by supplying the city with a "recorder connector" which enabled the city to monitor telephone conversations and by failing to disconnect the device when informed of the illegal activities of the city. Appellant does not claim, nor could he, that Bell actually engaged in the monitoring. His contention is that Bell is liable as an aider and abettor. Our statute provides that any person who "wilfully violates or aids, abets or procures a violation of this act" is guilty of a misdemeanor and is subject to civil damages.

■■ The essential element of aiding and abetting in criminal law is the sharing of wrongful intent with the

**3.** Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art II, § 202(4), 17 P.S. § 211.204(4)(Supp.1974).

In its brief, appellee City of Sharon claims that the equity court erred in concluding that it had violated the Anti-Wire Tap Act. Because it failed to file exceptions to the adjudication or take an appeal from the decree of the equity court, the city is precluded from now raising those issues decided adversely to it by the trial court. *Pennsylvania Human Relations Comm'n v. Chester Housing Authority,* 458 Pa. 67, 72 n. 12, 327 A.2d 335, 338 n. 12 (1974); *Pennsylvania Human Relations Comm'n v. Alto Reste Park Cemetery Ass'n,* 453 Pa. 124, 128–129 n. 5, 306 A.2d 881, 884 n. 5 (1973).

principal. In *Commonwealth v. MacFadden*, 448 Pa. 146, 150, 292 A.2d 358, 360 (1972), we held that

> "[t]o aid or abet in the commission of a crime, one must be an active partner in the intent to commit it."

See *Commonwealth v. Rife*, 454 Pa. 506, 312 A.2d 406 (1973); *Commonwealth v. Roscioli*, 454 Pa. 59, 309 A.2d 396 (1973); *Commonwealth v. Wilson*, 449 Pa. 235, 296 A.2d 719 (1972); *Commonwealth v. Pierce*, 437 Pa. 266, 263 A.2d 350 (1970); *Commonwealth v. Strantz*, 328 Pa. 33, 195 A. 75 (1937). Although we deal here not with a criminal prosecution for a violation of the statute but a civil proceeding, the Act defines the criminal violation and civil wrong with the same words and leaves no doubt that the Legislature intended that only that conduct punishable by criminal penalties can subject the actor to civil liability.

■ The record is devoid of any evidence of wrongful intent on the part of Bell Telephone. Bell's sole interest in supplying the city with the "recorder connector" was the protection of its equipment and employees from dangerous voltage surges. Disconnection of the device would not have guaranteed the termination of improper interceptions. Had the device been removed, the city could have violated Bell Telephone's tariff and connected its recording system directly to the telephone lines. We therefore cannot assign to Bell any illicit or improper intent to violate appellant's statutory rights. Without this intent, Bell Telephone was not, for purposes of this Act, an aider or abettor. We therefore affirm the court's decision to deny appellant equitable relief and damages against Bell Telephone.

## II. INJUNCTIVE RELIEF

■ After concluding that the City of Sharon's recording system violated the Pennsylvania Anti-Wire Tap Act, the chancellor enjoined the city from intercepting

and recording only appellant's calls. Appellant asserts that this injunction is erroneously narrow, that the court should have enjoined all use of the recording system. We cannot agree.

In his complaint, appellant alleged that not only his rights but the rights of all individuals in the community were being violated by the city's practice of recording all calls on police department lines. He accordingly asked the court to order the police department to desist from recording the calls of all individuals. Nevertheless, in the hearing on the preliminary injunction, appellant specifically stated that this suit was not filed as a class action.[4] Later in that hearing, the trial court, apparently in an effort to clarify the procedural posture of this action, advised appellant that the court would permit an amendment to appellant's complaint changing the individual action to a class action. Appellant made no such amendment.

Appellant sought to obtain class-action-like relief without satisfying the procedural prerequisites and protections of a class action. See Pa.R.Civ.P. 2230; see also *Penn Galvanizing Co. v. Philadelphia,* 388 Pa. 370, 130 A.2d 511 (1957); Delle-Donne and Van Horn, Pennsylvania Class Actions: The Future in Light of Recent Restrictions on Federal Access, 78 Dic.L.Rev. 460, 497–507 (1974). Moreover, were we to permit plaintiffs in actions like this to obtain such broad relief, not only would we circumvent our class action procedure, but we would also place defendants in a very difficult position. If the plaintiffs succeeded on the merits and the relief were granted, the defendants would be bound by the broad in-

4. The following colloquy indicates that appellant did not intend this action to be a class action.
"The Court: . . . If it were brought as a class action . . . it might be that a preliminary injunction should issue. I'll hear whatever you want to say.
"Mr. Rodgers [appellant's attorney]: Your Honor, this is not filed as a class action."

junction. However, should the defendants be successful in the litigation, the verdict in their favor would have no res judicata effect upon persons not a party to the suit. *Evans v. Moffat*, 388 Pa. 559, 131 A.2d 141 (1957). See *Albert v. Lehigh Coal and Navigating Co.*, 431 Pa. 600, 246 A.2d 840 (1968) ; *Weissman v. Prashker*, 405 Pa. 226, 175 A.2d 63 (1961); *Sollinger v. Himchak*, 402 Pa. 232, 166 A.2d 531 (1961). Thus, the defendants could be subjected to a multitude of suits all based upon the same basic set of facts, all seeking the same broad relief, and all free of any final effect upon new plaintiffs, although potentially binding upon the defendants. The class action under the Rules of Civil Procedure provide a means by which a large number of persons similarly situated can be represented in a single action without the negative effects of potential multiple litigation. Because appellant failed to utilize this procedure, he is entitled to only individual relief.[5]

## III. DAMAGES

■ Appellant next contends that the court erred in refusing to award him damages. Our Anti-Wire Tap Act specifically imposes liability for damages upon a finding that the statute has been violated.

"Whoever wilfully violates . . . this act . . . shall be liable to any person whose communication is unlawfully intercepted or divulged for treble the amount of any damage resulting from such unlawful interception, divulgence or use, but in no event less

5. Appellant's decision not to proceed as a class action but instead to bring an individual action in an attempt to establish this legal principle under the doctrine of stare decisis is understandable. A class action might have complicated and delayed the litigation, detracted from the main issue, and risked dismissal or disposition on a ground not related to the merits of his claim. As a matter of strategy, appellant's choice to rely on precedent and the expectation that a governmental unit and its officials would observe the court's decision was indeed a reasonable litigation determination.

than one hundred dollars ($100) and a reasonable attorney's fee."

The record is barren of any evidence that appellant was damaged by the city's interceptions. Appellant knew of the city's recording system soon after it was installed in October, 1972. In November, 1972, when he made each of the calls that were intercepted, he quickly realized that the conversations were being recorded. So warned, appellant apparently did not engage in any confidential conversations on the monitored telephones. Appellant on this record did not establish in any other manner "the amount of any damage resulting from such unlawful interception, divulgence or use." Having established no such damages, appellant is not entitled to treble damages under the Act.

However, we cannot conclude that appellant is entitled to no recovery at all. The Act plainly provides that anyone who establishes that his communication was unlawfully intercepted may recover at least $100 plus a reasonable attorney's fee. Thus the court, having determined that appellant's communication was "unlawfully intercepted," should have awarded appellant the statutory minimum of $100 and a reasonable attorney's fee.

The purposes of the damage provisions of this Act are not only compensation of those injured by illegal interceptions of telephone communications but also deterrence of the prohibited conduct through civil actions brought by private citizens. This is obvious from the deterrent nature of the treble damage provision. Cf. 15 U.S.C.A. § 15 (1973) (treble damages in private antitrust actions); *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969). Similarly, the $100 minimum recovery and attorney's fee provision was inserted to encourage private citizens to enforce the public policy guarantees of the Act. Cf. Truth-in-Lending Act § 130, 15 U.S.C.A. § 1640

(1974); *Jones v. Seldon's Furniture Warehouse, Inc.*, 357 F.Supp. 886 (E.D.Pa.1973); *Ratner v. Chemical Bank New York Trust Co.*, 329 F.Supp. 270 (S.D.N.Y. 1971). The Legislature, recognizing the unquantifiable nature of invasion-of-privacy injuries, determined that citizen enforcement of the Act was unlikely unless successful plaintiffs were assured at least minimum damages and attorney's fees. The Act therefore provides that a plaintiff who establishes that his telephone conversation was illegally intercepted is entitled to recover "in no event less than one hundred dollars ($100) and a reasonable attorney's fee." It must therefore be concluded that appellant is entitled to recover from the city $100 and a reasonable attorney's fee.[6]

Appellant also asserts that, apart from his statutory claim, he is entitled as a matter of common law to compensatory and punitive damages for a tortious invasion of privacy.[7] The existence of the tort of invasion of privacy in this Commonwealth cannot be denied. *Vogel v. W. T. Grant Co.*, 458 Pa. 124, 327 A.2d 133 (1974); *Bennett v. Norban*, 396 Pa. 94, 151 A.2d 476 (1959). However, as we noted in *Vogel*, the contours of this tort remain amorphous. *Vogel*, supra 458 Pa. at 125, 327 A.2d at 134.

In *Vogel*, we observed that the action for invasion of privacy is actually comprised of four analytically distinct torts: 1) intrusion upon seclusion, 2) appropriation of

6. The chancellor refused to award damages because he interpreted the statute as requiring a criminal conviction as a condition precedent to civil liability. Since the purpose of the damage provision is to encourage civil enforcement of the Act, all that is required to make the damage provision of the Act operative is a determination by the court, as was made here, that the Act was violated.

7. In support of his theory, appellant cites a single case, *Lutz v. Brookline Sav. & Trust Co.*, 117 Pitt.Leg.J. 239 (C.P.1969). *Lutz* does not sustain his proposition. In that case, the court held that, without evidence that some private fact has been disclosed to the public, a plaintiff does not establish the tort of invasion of privacy.

name or likeness, 3) publicity given to private life, and 4) publicity placing a person in false light. *Vogel* at 129, 327 A.2d at 136.[8] Most of the Pennsylvania decisions dealing with invasions of privacy have involved either publicity given to private facts or the appropriation of one's likeness. See *Vogel v. W. T. Grant Co.*, 458 Pa. 124, 327 A.2d 133 (1974); *Corabi v. Curtis Publishing Co.*, 441 Pa. 432, 273 A.2d 899 (1971); *Bennett v. Norban*, 396 Pa. 94, 151 A.2d 476 (1959); *Schnabel v. Meredith*, 378 Pa. 609, 107 A.2d 860 (1954); *Aquino v. Bulletin Co.*, 190 Pa.Superior Ct. 528, 154 A.2d 422 (1959); *Hull v. Curtis Publishing Co.*, 182 Pa.Super. 86, 125 A.2d 644 (1956). Our research reveals no Pennsylvania appellate cases in which the invaded interest was the privacy of one's conversations.

Nevertheless, other jurisdictions recognize that improper interception of telephone conversations is tortious conduct. *Fowler v. Southern Bell Telephone Co.*, 343 F. 2d 150 (5th Cir. 1965); *Rhodes v. Graham*, 238 Ky. 225, 37 S.W.2d 46 (1931); *Hamberger v. Eastman*, 106 N.H. 107, 206 A.2d 239 (1965); *Nader v. General Motors Corp.*, 25 N.Y.2d 560, 307 N.Y.S.2d 647, 255 N.E.2d 765 (1970) (District of Columbia law); *LaCrone v. Ohio Bell Telephone Co.*, 114 Ohio App. 299, 182 N.E.2d 15 (1961); *Billings v. Atkinson*, 489 S.W.2d 858 (Tex. 1973); *Roach v. Harper*, 143 W.Va. 869, 105 S.E.2d 564 (1958); cf. *Pearson v. Dowd*, 133 U.S.App.D.C. 279, 410 F.2d 701, cert. denied, 395 U.S. 947, 89 S.Ct. 2021, 23 L. Ed.2d 465 (1969). Under the principles of these cases, it is clear that appellant has not proved an invasion of privacy.

The cases cited above all indicate the interest the law seeks to protect is the right to keep one's private conversations safe from unauthorized listeners. Thus a basic

---

8. See Restatement (Second) of Torts § 652A–J (Tent.Draft No. 13, 1967); W. Prosser, Handbook of the Law of Torts § 117, at 804 (4th ed. 1971).

element of this form of the tort is the intentional over-hearing by one not intended to be a party to the communication of the contents of a private conversation. In the absence of an overhearing of a private communication, this tort has not been committed.

In *LeCrone v. Ohio Bell Telephone Co.*, 120 Ohio App. 129, 201 N.E.2d 533 (1963), the Ohio Bell Telephone Co. attached an extension telephone to the plaintiff-wife's home telephone at the request of the plaintiff's estranged husband. The extension was connected at Bell's central office without entering plaintiff's home. Plaintiff brought an invasion of privacy action against the telephone company. At trial, plaintiff conceded that the company had never listened to any of her conversations. The court concluded that plaintiff had not proved an invasion of privacy.

"[T]he mere making of the connection might constitute a breach of contract by [the Ohio Bell Telephone Co.]. The threat to so do might possibly form the basis for injunctive relief. However, in our opinion, the only possible act which could constitute an invasion in the present case is the eavesdropping itself, and the connection or tap here constituted only a preparation for that invasion of privacy." Id. at 134, 201 N.E.2d 538.

We conclude that appellant has not established a cause of action. Although his conversations were recorded, there is no evidence from which it can be inferred that they were replayed. The record clearly shows and the court found that the tapes were reused every month, each new use erasing the conversations previously recorded on that tape. It would appear the tape recording of appellant's conversations no longer exists and will not be heard by anyone. Therefore the only ear ever to hear appellant's communication was a mechanical one. Because neither the evidence nor the inferences arising therefrom proves that appellant's private conversation

were heard by any human ear or that there is some potential they will be heard in the future, the invasion of privacy tort has not been established. Thus appellant on this record is not entitled to recover compensatory or punitive damages on the common law theory advanced.[9]

Accordingly the decree is modified to award appellant the minimum statutory recovery of $100 and.a reasonable attorney's fee. The cause is remanded for a determination of a reasonable attorney's fee. The decree as modified is affirmed. Each party pay own costs.

POMEROY, J., filed a concurring opinion.

POMEROY, Justice (concurring).

I join in parts I and II of the Court's Opinion and in so much of part III as concerns damages for violation of the Pennsylvania anti-wiretap statute. I do not join in that portion of part III which pertains to the tort of invasion of privacy because the appellant has not pleaded a cause of action for tortious invasion of privacy. Thus, there is no basis for the trial court's having considered the elements of that tort or for our doing so now.

The complaint is one in equity brought, allegedly, on behalf of "plaintiff and all others whose constitutional rights have been, and are being, violated by the conspiracy between the Bell Telephone Company of Pennsylvania and the City of Sharon" (Complaint, paragraphs 13 and 14, R. 20a). The wrong asserted to have been done by the defendants was the "bugging" or tapping of the tele-

9. Appellant also assigns as error the court's failure to grant him relief against the Mayor of Sharon, Basil Scott, and the Chief of Police, Daniel Gross. Although appellant named both as defendants in his complaint, he sought no relief from either.

For reasons that remain unclear from the record, appellant entered a default judgment against Gross and Scott. In its adjudication, the court struck that judgment because it found "no reason to involve either of these defendants individually." In light of appellant's failure to ask the court for some remedy against these defendants, we cannot agree that the court erred. Cf. Pa. R.Civ.P. 1021.

phone conversation referred to in the Opinion of the Court "in violation of his [plaintiff's] client's constitutional rights and the statutes of the Commonwealth of Pennsylvania and the laws of the United States of America" (Complaint, paragraph 7, R. 18a). Other paragraphs of the Complaint alleged that the tapping generally of conversations at the police station was "in violation of the laws of the Commonwealth of Pennsylvania and the laws of the United States" (Complaint, paragraphs 8 and 9, R. 18a, 19a).

As the appellant has himself told the Court, he sued "as an individual seeking relief from the continued violation of his constitutional rights and the constitutional rights of the public, and also seeking injunctive relief against the defendants from their continued violation of a statute enacted for the protection of the plaintiff and all other members of the public" (Brief of appellant, pp. 17, 18).

The entire thrust of the Complaint is violation of the Pennsylvania Anti-Wire Tapping Statute and the federal constitution, from which injunctive relief is sought. While damages are also prayed for, they are not demanded for the tort of invasion of privacy. Had it been intended to assert a cause of action for the commission of that wrong, which I quite agree is recognized in Pennsylvania, there should have been a separate count setting it forth and containing a demand for relief. See Pa.R.C.P. 1020, 1041, 1501. The Complaint, as filed, does not purport to assert more than a single cause of action. I thus view the Court's discussion of invasion of privacy as surplusage, but not detracting from the result, and I thus join in the decision of the Court.

Since, however, the Court has seen fit to consider the case as one in which a claim for the invasion of privacy is presented, I feel compelled to note my disagreement with its artificial restriction of that tort so as to exclude intrusions by means of an artificial, as distinguished

from a human, ear. While some torts, including some forms of invasion of privacy, require publication as an element of the offense, there is no such requirement for an action for intrusion upon another's seclusion. See W. Prosser, The Law of Torts § 117 at 814 (4th ed. 1971); *Dietmann v. Time, Inc.*, 449 F.2d 245 (9th Cir. 1971); *Fowler v. Southern Bell Telephone Co.*; 343 F.2d 150 (5th Cir. 1965); *Froelich v. Adair*, 213 Kan. 357, 516 P. 2d 993 (1973).*

Thus, it has generally been held that an invasion of privacy occurs when a listening device is hidden in a room or attached to a telephone even though the person monitoring the "bug" or "wiretap" did not convey the information he overheard to any other person. *Fowler v. Southern Bell Telephone Co., supra; McDaniel v. Coca Cola Bottling Co.*, 60 Ga.App. 92, 2 S.E.2d 810 (1939); *Rhodes v. Graham*, 238 Ky. 225, 37 S.W.2d 46 (1931). Further, and contrary to what the majority opinion suggests, the Supreme Court of New Hampshire, in *Hamberger v. Eastman*, 106 N.H. 107, 206 A.2d 239 (1964), held specifically that the plaintiffs, a husband and wife, had stated a cause of action by averring that the defendant had installed a concealed listening device in their bedroom even though they failed to allege that "anyone listened or overheard any sounds or voices originating from the plaintiffs' bedroom." 206 A.2d at 242.

It is my opinion that the New Hampshire Supreme Court is correct in its holding in *Hamberger*. The tort of intrusion is designed to protect an individual, not

---

* Restatement (Second) of Torts § 652B (Tent.Draft No. 13, 1967), which is titled "Intrusion Upon Seclusion", provides:
 "One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another, or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable man."
 The Reporter's Note to The American Law Institute, which accompanies this section, states that "[t]his is very definitely a distinct form of the tort, which *does not depend upon publicity.*" (emphasis added)

against what other human beings may know or think of him, but rather against the very act of interfering with his seclusion. One's seclusion may be as much disrupted by the presence of an electronic ear in a setting where one would normally expect to be alone as it is by the presence of a human ear in that same place. Of course, whether any human being heard or may hear the recording will doubtless have considerable bearing upon the amount of damages suffered by the person whose privacy has been invaded, but the absence of the element of present or likely future human hearing of the recording should not be fatal to the plaintiff's cause of action for intrusion upon seclusion.