J-A10034-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ANTHONY SARACCO | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL SWEENEY AND DENA | : | |
| SWEENEY | : | |
| | : | No. 2473 EDA 2019 |
| Appellant | : | |

Appeal from the Order Entered August 9, 2019
In the Court of Common Pleas of Delaware County Civil Division at
No(s): CV-2018-007839

BEFORE: BOWES, J., SHOGAN, J., and PELLEGRINI, J.*

MEMORANDUM BY PELLEGRINI, J.:                    **FILED JUNE 23, 2020**

Michael and Dena Sweeney (the Sweeneys) appeal from the order
entered in the Court of Common Pleas of Delaware County (trial court)
granting the motion for a permanent injunction filed by Anthony Saracco
(Saracco) and directing the Sweeneys to remove and/or redirect the visual
and audio recording devices on their property that face Saracco's property.
We vacate the trial court's order as it relates to the award of attorney's fees
only[1] and affirm it in all other respects.

_____

[1] At the hearing before the trial court, Saracco's counsel stated that they were
there only for injunctive relief and not to handle attorney's fees that were to
be handled in arbitration. In its Rule 1925 opinion, the trial court asks this
Court to remand the issue of attorney's fees and costs for arbitration. (***See***

*Retired Senior Judge assigned to the Superior Court.

**I.**

The parties are adjacent property owners in Parkside, Pennsylvania, with driveways located between the two properties. They have been involved in a long-standing dispute, causing, since approximately 2013, the Parkside Borough Police Department to respond to calls at their properties over 100 times.

Involved in this appeal is the Sweeneys' installation of security cameras and audio recording devices, many of which point to Saracco's home. This caused Saracco to file a civil action contending that the installation of those devices constituted an invasion of privacy[2] and a violation of the Wiretapping and Electronic Surveillance Control Act, 18 Pa.C.S. § 5701-82 (Wiretap Act),

---

Trial Ct. Op., at 11). Remand renders the Sweeneys' challenge to the trial court's award of attorney's fees to Saracco moot. The Sweeneys acknowledge this by abandoning this issue in their brief. Accordingly, we will remand the issue of attorney's fees in accordance with the trial court's request.

[2] "An action for invasion of privacy is comprised of four distinct torts: (1) **intrusion upon seclusion**, (2) appropriation of name or likeness, (3) publicity given to private life and (4) publicity placing the person in a false light. ***Marks v. Bell Tel. Co. of Pa***., 331 A.2d 424 (Pa. 1975)." ***Harris by Harris v. Easton Publishing Co.,*** 483 A.2d 1377, 1383 (Pa. Super. 1984). The tort pled here is "intrusion upon seclusion". Section 652B of the Second Restatement of Torts states:

> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

and he sought both damages and injunctive relief.[3]  Pertinently, Section 5725 of the Wiretap Act provides in relevant part:

> Any person whose wire, electronic or **oral communication** is intercepted, disclosed or used in violation of this chapter shall have a civil cause of action against any person who intercepts, discloses or uses or procures any other person to intercept, disclose or use, such communication. . .

18 Pa.C.S. § 5725(a) (emphasis added).

At the hearing before the trial court limited to the request for injunctive relief, Michael Sweeney was called both as on cross by Saracco and later in his defense.  Cumulatively, his testimony established that he installed the cameras in May 2009 to protect himself from being falsely accused of vandalism, to protect his property from being vandalized, and to protect his family from vulgar speech.  He testified that Saracco used racial slurs and sexually suggestive speech towards him and his wife and that Saracco directed derogatory terms to his handicapped son.[4]  Due to their disputes, Sweeney testified that he and his wife appeared in 2013 before a District Judge who issued a no-contact order between the parties and, after Saracco violated that order, he was imprisoned and was made to surrender his firearms.

---

[3] The Sweeneys also filed a counterclaim for invasion of privacy and injunctive relief.

[4] Dena Sweeney testified about Saracco's derogatory language directed towards her and her son.  She testified that Saracco has followed and harassed her family and has even affected their places of work.

He testified that his surveillance system now consists of six functioning cameras on the property, four of which faced Saracco's property, an audio recording device on the side of his home that faces Saracco's house installed in 2013, and a DVR system with a 30-day retention period. The surveillance cameras on Saracco's side of the Sweeneys' property are directed at Saracco's side door, his front porch, garage, back deck and back yard. He also testified that he posted a sign outside of his home alerting people of both video and audio recording.

He admitted, though, that the audio recording devices could have picked up conversations from Saracco's front yard and his enclosed porch, and that his recording device also recorded unsuspecting occupants of Saracco's property. After admitting that his audio recording devices have recorded sound up to three to four houses away from his own home, Michael Sweeny, in response to questions, testified:

> Q: And over the course of those years, since 2009 and then 2013 with the audio recording, it's fair to say that you have recorded Mr. Saracco on his driveway and adjacent to the side of his house, is that correct?
>
> A: Correct.
>
> Q: You've -- there have been recordings of him in his back yard, correct?
>
> A: Correct.
>
> Q: Recordings of him on his deck?
>
> A: Correct.

Q: Recordings of him under his deck?

A: Correct.

Q: Recordings of him on -- in his door to his home?

A: In his doorway, correct.

Q: . . . You made recordings of Mr. Saracco while he's been on his enclosed front porch, correct?

A: Yes.

Q: Has it [the audio recording devices] in your experience, picked up somebody having a normal conversation in Mr. Saracco's front yard?

A: Sure, yes.

(Reproduced Record (R.R.) 161a).

Saracco testified that he and the Sweeneys had a contentious relationship that began in 2009 after purported vandalism to his vehicle. He further testified that subsequent incidents were initiated by the Sweeneys. He testified that when he was in his garage, the Sweeneys rotated the camera that is on the fence post to point into his garage so that they can observe him. Because two of the cameras on the side of the Sweeneys' property are positioned so they are or can be pointed into a window, he testified that he put up heavy curtains on the window and tinted his windows to maintain his privacy. He stated that the visual and audio security directed towards his home has affected his socializing. He used to have friends come over to socialize, but they do not come over anymore because they do not want to be recorded. He testified that he put a roof and a barn door on his deck so that

he could have some privacy. As to the security cameras he installed, he testified that he made a deliberate effort to ensure that his cameras were facing his own property. He admitted that he used inappropriate language but only in response to comments made by the Sweeneys to him.

Finding a violation under the Wiretap Act because the audio devices recorded conversations that took place on Saracco's property, the trial court issued the permanent injunction,[5] providing in relevant part:[6]

> 1. [The Sweeneys] shall remove all audio recording devices from the Property located at 136 Chelton Road, Parkside, Pennsylvania that face Mr. Saracco's property, including his garage;

---

[5] To prevail on a claim for a permanent injunction, the plaintiff must establish a clear right to relief, that there is an urgent necessity to avoid an injury that cannot be compensated for by damages, and that greater injury will result from refusing rather than granting the relief requested. *See Kuznik v. Westmoreland Cty. Bd. of Comm'rs*, 902 A.2d 476, 489 (Pa. 2006). "Where the essential prerequisites of an injunction are satisfied, the court must narrowly tailor its remedy to abate the injury." *Matenkoski v. Greer*, 213 A.3d 1018, 1027 (Pa. Super. 2019) (citation omitted). "An injunction should be as definite, clear and precise in its terms as possible, so that there may be no reason or excuse for misunderstanding or disobeying it." *Id*. (citation omitted). "When practicable, an injunction should plainly indicate to the defendant all of the acts which he is restrained from doing, without calling upon him for inferences or conclusions about which persons may well differ." *Id*. (citation omitted).

We also are mindful that "courts sitting in equity hold broad powers to grant relief that will result in an equitable resolution of a dispute." *Gutteridge v. J3 Energy Grp., Inc.*, 165 A.3d 908, 916–17 (Pa. Super. 2017) (citation omitted). "In addition, a trial court must formulate an equitable remedy that is consistent with the relief requested." *Id.* (citation omitted).

[6] On appeal, the Sweeneys do not challenge the trial court's injunction concerning the positioning of video cameras on their property.

\*    \*    \*

4. The removal of said audio recording devices and redirecting of cameras shall be confirmed by an inspection by an independent third party to be agreed upon by the parties. The inspector shall provide a letter to [Saracco's] counsel confirming the removal of the audio recording devices and the redirecting of the cameras. The costs of inspection shall be paid by [the Sweeneys];

\*    \*    \*

6. Both parties are enjoined from redirecting their cameras at the other party's property, installing any spotlights directed at the other party's property, or installing any audio recording devices; and

7. [The Sweeneys] are ordered to pay [Saracco's] attorney fees and costs . . .

(Order, 8/09/19).

The Sweeneys timely appealed. They and the trial court complied with Rule 1925. **See** Pa.R.A.P. 1925(a)-(b).[7]

---

[7] Our standard of review is as follows:

The grant or denial of a permanent injunction is a question of law. Regarding the trial court's legal determination, our standard of review is *de novo*, and our scope of review is plenary. As in all equity matters, however, we must accept the trial court's factual findings and give them the weight of a jury verdict where they are supported by competent evidence.

***Thomas A. Robinson Family Ltd. P'ship v. Bioni***, 178 A.3d 839, 843 (Pa. Super. 2017) (citation omitted).

- 7 -

## II.

On appeal, the Sweeneys contend that the trial court erred in finding that the recording devices facing Saracco's property captured "oral communications" in violation of the Wiretap Act. They maintain that what was captured were not "oral communication[s]" within the meaning of that term because Saracco had no reasonable expectation that the hostile, lewd statements he made in the parties' driveways or shouted from his property would not be intercepted. Because what was captured were not "oral communications," the Sweenys argue Saracco did not establish that there was a violation of the Wiretap Act vitiating the trial court's basis that he had a clear right under the law for the grant of a permanent injunction.

The Wiretap Act defines the term "oral communication" as "[a]ny oral communication uttered by a person possessing an expectation that such communication is not subject to interception under circumstances justifying such expectation." 18 Pa.C.S. § 5702.

> To establish a *prima facie* case under the Wiretap Act for interception of an oral communication, a claimant must demonstrate that: (1) he engaged in a communication; (2) he possessed an expectation that the communication would not be intercepted; (3) his expectation was justifiable under the circumstances; and (4) the defendant attempted to, or did successfully, intercept the communication, or encouraged another to do so.
>
> [I]n determining what constitutes an 'oral communication' under the Wiretap Act, the proper inquiries are whether the speaker had a specific expectation that the contents of the discussion would not be intercepted, and whether that expectation was justifiable under the existing circumstances. In determining

- 8 -

> whether the expectation of non-interception was justified under the circumstances of a particular case, it is necessary for a reviewing court to examine the expectation in accordance with the principles surrounding the right to privacy, for one cannot have an expectation of non-interception absent a finding of a reasonable expectation of privacy. To determine the existence of an expectation of privacy in one's activities, a reviewing court must first examine whether the person exhibited an expectation of privacy; and second, whether that expectation is one that society is prepared to recognize as reasonable.

*Matenkoski*, *supra* at 1028–29 (citation omitted).

At the outset, we disagree with the Sweeneys' characterization that all of the recorded statements were just Saracco's hostile verbal attacks on them because Saracco was recorded on his own property at times when he was not interacting with the Sweeneys. Michael Sweeney's own testimony established that the recording equipment is sensitive enough to pick up sound made on Saracco's property, including in his backyard and on his deck, and that the video cameras would record "anyone in the visibility of the camera." (N.T. Trial, at 53; *see id.* at 38).

Relying on *Agnew v. Dupler*, 717 A.2d 519, 524 (Pa. 1998), the Sweeneys nonetheless contend that Saracco lacked a reasonable privacy interest in the recorded statements, even though those conversations were not directed at them and took place on his property. In *Agnew*, a police officer alleged that the police chief violated the Wiretap Act by monitoring his squad room conversations with another officer through an intercom system. Our Supreme Court held that these conversations were not oral communications under the Wiretap Law because the officer did not possess a

reasonable expectation of privacy in the conversations given that the squad door room was open, all conversations could be heard without amplification in the chief's office, and the chief had the light on in his office. **Agnew** simply does not apply for the aforesaid reasons where those recorded did not have a reasonable expectation of privacy while, in this case, the Sweeneys recorded Saracco in his own home where individuals do have an expectation of privacy.[8]

In **Matenkoski supra**, on which the Sweeneys also rely, property owners placed their camera on a windowsill in their house and directed it outside at the driveway and the side of the detached garage where the neighbors were operating a commercial automobile repair and restoration business. The neighboring property was extremely noisy and odorous and was in violation of several provisions of the township zoning ordinance. This Court determined that the neighbors lacked a justifiable expectation their conversations would not be intercepted where the purpose of the audio and camera recordings was to document the noise and activity generated by their

_____

[8] The inside of one's home is the area in which every person has the greatest expectation of privacy and, thus, it is an area entitled to the maximum constitutional protection. **See Commonwealth v. Bricker**, 666 A.2d 257, 261 (Pa. 1995) ("We have long recognized the sanctity of the home in this Commonwealth as we have repeatedly stated that '[u]pon closing the door to one's home to the outside world, a person may legitimately expect the highest degree of privacy known to our society.'" (quoting **Commonwealth v. Brion**, 652 A.2d 287, 289 (1994), in turn quoting **Commonwealth v. Shaw**, 383 A.2d 496, 499 (1978); **Commonwealth v. Roland**, 637 A.2d 269, 270 (1994)).

commercial automobile business. ***Matenkoski*** is also distinguishable because it involved activities that took place in an illegal business rather than their neighbor in and around his own private home, again, where he had a reasonable expectation of privacy.[9]

As the trial court cogently explained:

> The audio and visual recordings of [Saracco] on his property were a violation of the Wiretap Act because he was engaging in oral communications and conversing with house guests while under surveillance. [Saracco] testified about his expectation of privacy in his home and how he felt violated when he became aware that the video camera could see inside the interior of his home and that the audio devices could interpret conversations he had on his porch. While there were signs alerting [Saracco] that [the Sweeneys] had video and audio surveillance, his expectation that the surveillance would include the outdoor and indoor parts of his property were not initially foreseeable. [Saracco] only later became aware that his property, including the interior of his home, back deck, front porch and his driveway, were under surveillance.
>
> . . . [The Sweeneys] have violated the Wiretap Law by intercepting [Saracco's] communication, by maintaining audio and surveillance devices that have recorded [Saracco's] interaction with guests and other communication.

(Trail Ct. Op., at 10-11) (record citations omitted).

---

[9] The Sweeneys' reliance on ***Pennsylvania State Police v. Grove***, 161 A.3d 877, 902 (Pa. 2017), is similarly misplaced because the factual circumstances of that case are plainly inapposite. The ***Grove*** Court held that disclosure of police motor vehicle recordings pursuant to the Right-To-Know Law does not violate the Wiretap Act where the conversations took place in broad daylight at the scene of an accident on a public roadway within earshot and easy view of bystanders or passersby.

We agree with the trial court and conclude that Saracco has a reasonable expectation of privacy in his conversations on his private property, the interceptions of which were improper under the Wiretap Act.

## III.

## A.

Even if their recording devices captured "oral communications," the Sweeneys challenge the trial court's directive to "remove all audio recording devices . . . that face Mr. Saracco's property, including his garage." (Order, 8/09/19, at Paragraph 1). The Sweeneys contend that this provision is overbroad and encompasses otherwise legal activity by eliminating their ability to monitor half of their property. *See Matenkoski*, *supra* at 1027 ("Where the essential prerequisites of an injunction are satisfied, the court must narrowly tailor its remedy to abate the injury.") (citation omitted).

Mr. Sweeney testified that the audio equipment is sensitive enough to pick up a conversation in Saracco's backyard and under his deck. Not only does that equipment record Saracco's conversations, it records any unsuspecting third parties on Saracco's property. Even though the Sweeneys contend that those individuals have no expectation of privacy because there were notice signs posted on their property of the recording devices, those notices serve only to notify visitors to **their** property and does not give them *carte blanc* to record individuals on the property of others. Most importantly,

- 12 -

the audio equipment captures "oral communications" in violation of the Wiretap Act.

Given all that, the trial court properly exercised its broad power to fashion an equitable, narrowly tailored directive to remove only those audio devices facing Saracco's property.

**B.**

The Sweeneys also contend that the trial court's enjoining of both parties from installing audio recording devices on their properties is overbroad and constitutes a blanket ban on their ability to monitor those portions of their property that do not face Saracco. Even if this were so, the parties have a longstanding turbulent relationship and have been unable or unwilling to resolve their conflicts. The police have been called to their properties over 100 times and multiple judges have issued no contact orders. Given these circumstances, a blanket order would not have been overbroad.

However, this reading of the provision as a blanket ban is inconsistent with the remaining language of the order that required removal of only those devices facing Saracco's property. In its opinion, the trial court explained that the orders addressed the audio recording devices intruding onto Saracco's property and directed the parties "to cease audio recording of one another." (Trial Ct. Op., at 9). When read in context, Paragraph 6 of the order clearly prohibits the Sweeneys' reinstallation of audio recording devices on the side of their property facing Saracco.

**C.**

Finally, with regard to the Sweeneys' assertion that their obligation to pay for the cost of the inspection "essentially forces [them] to pay for Saracco's compliance with the order," such claim is baseless. (Sweeneys' Brief, at 13). The plain language of the order obligates the Sweeneys to pay for an inspection to confirm **their own compliance** with the order and to provide this confirmation to Saracco's attorney. (*See* Order, 08/09/19, at Paragraph 4).

Accordingly, for the foregoing reasons, we vacate the trial court's order as it relates to the award of attorney's fees only and affirm it in all other respects.

Order vacated in part as to attorney's fees only. Order affirmed in all other respects. Case remanded for arbitration on the limited issue of attorney's fees. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/23/2020

- 14 -