MEMORANDUM OPINION AND ORDER
 

 McDONALD, District Judge.
 

 Plaintiff has moved to dismiss or for summary judgment on defendant’s counterclaims for invasion of privacy under the statutes and case law of Texas and Pennsylvania.
 
 [1]
 
 Defendant Arco Chemical Corp. (“Arco”) alleges plaintiff met with defendant’s employees behind closed doors in defendant’s offices in Philadelphia, Pennsylvania, “for purposes of discussing matters related to plaintiff’s employment,” that plaintiff recorded the conversation by a tape recorder, played it to his wife, friends, acquaintances and employees of defendant, and thereby violated defendant’s reasonable expectation of privacy. Because neither the parties nor the Court rely on matters outside the pleadings, defendant’s motion is taken as one for dismissal under Rule 12(b)(6), Federal Rules of Civil Procedure.
 
 [2]
 
 Thus, “the well-pleaded material allegations of the complaint are taken as admitted but conclusions of law and or unwarranted deductions of fact are not admitted.” Ward v.
 
 Hudnell,
 
 366 F.2d 247, 249 (5th Cir. 1966).
 

 Plaintiff moves to dismiss the counterclaim on the ground, first, that the Tex. Rev.Civ.Stat.Ann., art. 9019 (Vernon), which provides civil remedies for interception of communications is not applicable to this case because the statute defines interception as the “aural acquisition of information without the consent of a party to the communication,” (emphasis added) and plaintiff, was a party to the conversation in question and consented to his own interception of it. In addition, plaintiff argues that the statute does not apply to actions occurring outside the State of Texas. Defendant does not respond to plaintiff’s opposition to application of the Texas statute, apparently conceding that it has no Texas statutory cause of action.
 

 Second, plaintiff argues that 18 Pa.Con. Stat.Ann. § 5725 (Purdon 1978) does not apply to plaintiff’s alleged recording on May 19,1978 because it became effective on December 4, 1978 and 18 Pa.Cons.Stat.Ann. § 5702 (Purdon Í973), the statute in effect at the time of the alleged recordings, applied only to communications by telephone or telegraph. In addition, plaintiff claims his use of the recording in the January 15, 1981 deposition is exempt as part of a judicial proceeding. Defendant replies that 18 Pa.Cons.Stat.Ann. § 5725 applies to plaintiff’s use of the recorded conversation after the statute’s effective date in his deposition in January, 1981, because it was not shielded by a protective order or Seal of Court and that defendant has “a reasonable belief, as yet unconfirmed” that plaintiff made other uses of the recording after the statute became effective.
 

 Finally, plaintiff claims he violated no common law right of privacy. Noting that defendant offers no legal authority for its position that a corporation has a right of privacy, he argues that Pennsylvania and Texas common law of privacy do not support a cause of action on these facts. Defendant replies that it does have a cause of action under both Pennsylvania and Texas case law for invasion of privacy.
 

 
 *1273
 
 I. Pennsylvania Láw
 

 The cases on which defendant relies for his argument that plaintiff violated the statutory as well as the common law of Pennsylvania concern the admissibility into evidence of conversations obtained in violation of anti-wire tapping statutes. There is no question that the former Pennsylvania statutes, 15 Pa.Stat.Ann. § 2443 (Purdon 1957), 18 Pa.Stat.Ann. § 3742 (Purdon Supp. 1972-73) and §§ 5701-5704 (Purdon 1973) forbid interception of telephone conversations and were unlike the analogous federal or state wiretap statutes (including the Texas Statute enacted in 1966) in that they required the consent of both parties to a conversation to authorize its transmittal. Although these statutes do not apply to the instant case because Arco alleges plaintiff intercepted • a face-to-face conversation, they provide the background to the current statute. The Pennsylvania Supreme Court has held that “Pennsylvania’s anti-wiretapping statute clearly demands consent of
 
 all
 
 parties be given before any device for overhearing or recording is installed or utilized,”
 
 Commonwealth v. McCoy,
 
 442 Pa. 234, 239, 275 A.2d 28, 30. (Pa.1971) (emphasis in original). The purpose of the statutes, as so colorfully expressed by the Court in
 
 Common wealth v. Murray,
 
 423 Pa. 37, 51-52, 223 A.2d 102, 110 (Pa.1966), was to protect the “golden, diamond-studded right to be let alone” from interference by “detectives and private intermeddlers,” to prevent the obtaining of “unauthorized information for the use of social scavengers, discredited business sharpers and political buccaneers,” to guard “the most personal dealings and the most sacred relationships, what the lawyer says to his client, the' physician to his patient, the minister to the parishioner, the priest to the penitent, the husband to his wife and the fiance to his betrothed,” and to keep “the most malevolent scandalmonger [from helping] himself at the banquet table of the most guarded secrets and commit[ting] burglary of the most precious jewels of families intimacies ... . ”
 

 The anti-wire tap statute has not been applied to every telephone conversation. In
 
 Commonwealth v. Gullett,
 
 459 Pa. 431, 443, 329 A.2d 513, 519 (Pa.1974) the court held that the anti-wiretapping statute “is designed to secure the integrity of this particular means of private communication,” and that where a telephone “caller did not intend the privacy of the communication to be maintained,” but under the circumstances the call “carried with it the permission of the caller to direct the communication ...” to others, there was no violation of the law.
 

 The current Pennsylvania statute 18 Pa. Cons.Stat.Ann. § 5725, enacted in 1978, has not been construed by the Pennsylvania courts. There are obvious differences between the scope and purpose of the prior statutes on the one hand, and the current statute on the other. The former 18 Pa. Stat.Ann. § 5702 (Purdon 1973) provided that a person was guilty of a second degree misdemeanor if he “intercept[ed] without permission of
 
 the parties
 
 to the communication a message or other communication by telephone or telegraph.”
 
 [3]
 
 The new “Wiretapping and Electronic Surveillance Control Act,” defines “intercept” simply as the “[a]ural acquisition of the contents of any wire or oral communication through the use of any electronic, mechanical or other device” and omits the qualification, “without permission of the parties.” It defines, “oral communication”, in § 5702, as “[a]ny oral communications uttered by a person possessing an expectation that such communication is not subject to interception under circumstances justifying such expectation.” Section 5725 provides a civil cause of action for any person whose “oral communications” are “intercepted” or used in violation of the law. Thus, the current statute is at the same time broader than the previous statutes in that it covers all oral communication whether or not by means of telephone or telegraph, and narrower in that it protects communication only if a) the person communicating expects that the com
 
 *1274
 
 munication is not subject to interception
 
 and
 
 b) the circumstances of the communication justify that expectation of privacy. Section 5702 also defines “person” to include “any . . . corporation” and thus contemplates that corporations have a right of privacy which in certain situations might be invaded. Under the statute, however, such interception is actionable only if the circumstances of the communication justify the corporation’s expectation of privacy.
 

 Defendant argues that decisions antedating the 1978 enactment should be read in its light, because the current statute “concretes the illegality of plaintiff’s prior acts under common law.” The Court finds, however, that rather than demonstrate that Arco has a cause of action in the instant case, opinions of the Pennsylvania courts, limit a protected expectation of privacy to matters within the individual personal realm described in
 
 Murray.
 

 In
 
 Vogel, et al. v. W. T. Grant Company,
 
 458 Pa. 124, 327 A.2d 133, 137-8 (Pa.1974) the Supreme Court of Pennsylvania held defendant’s conduct in contacting plaintiff’s employer and mother in an attempt to collect a debt owed by plaintiff credit customers did not constitute a breach of privacy in the sense of giving “publicity to matters concerning the private life of another, of a kind highly offensive to a reasonable man,”
 
 [4]
 
 because the “notification of two or four third parties is not sufficient to constitute publication” of the debt. “Publication to a small group does not constitute publicity for invasion of privacy.” The court identified the three elements of this type of invasion of privacy as: 1) publicity 2) which is unreasonable and 3) is given to a private fact. Plainly plaintiff’s alleged playing of recordings of the meeting in which defendant Arco dismissed him would not fall into this category of invasion of privacy.
 

 In
 
 Marks v. Bell Telephone Company of Pennsylvania,
 
 460 Pa. 73, 331 A.2d 424, 431 (Pa.1975), where plaintiff claimed compensatory and punitive damages for a common law tortious invasion of privacy, as well as a violation of 18 Pa.Stat.Ann. § 3742, (Purdon Sujpp.1974), the court noted that the “contours” of that “tort remain amorphous” and that Pennsylvania cases involved either publicity given to private facts or the appropriation of one’s likeness not the privacy of one’s conversations. It noted that courts in other jurisdictions holding interception of telephone conversation improper
 

 indicate the interest the law seeks to protect is the right to keep one’s private conversation safe from unauthorized listeners. Thus a basic element of this form of the tort is the intentional overhearing by one not intended to be a party to the communication, . . .
 

 and held that where recorded conversations were not replayed, there was no violation. Finally, in
 
 Vernars v. Young,
 
 539 F.2d 966 (3rd Cir. 1976) the Court of Appeals for the Third Circuit held that
 
 Marks
 
 was authority for a cause of action for invasion of privacy in the sense of intrusion upon seclusion for the unconsented opening and reading of mail addressed to plaintiff and marked personal.
 

 
 *1275
 
 Just as private individuals have a right to expect their telephone communication will not be monitored, they also have a reasonable expectation that their personal mail will not be opened by unauthorized person.
 

 Id.
 
 at 968-969. The present case is clearly not one of a third party’s prying or eavesdropping on a private conversation.
 

 To the extent the new statute embodies the right of privacy which the Pennsylvania court found delineated in the previous statutes, it could not be applied to the alleged interception by plaintiff in the instant case. The interest the previous wiretap statutes were designed to protect, as indicated in
 
 Murray,
 
 is the common law privacy interest of the individual human being, in feelings and sensibilities, not property or business. The Supreme Court has noted in upholding the power of the PTC to require corporations to file certain reports that, “[corporations can claim no equality with individuals in the enjoyment of a right of privacy . . . They are endowed with public attributes. They have a collective impact upon society from which they derive the privilege of acting as artificial entities.”
 
 United States
 
 v.
 
 Morton Salt Co.,
 
 338 U.S. 632, 652, 70 S.Ct. 357, 368, 92 L.Ed. 401 (1950) (citations omitted).
 

 To the extent the current statute, despite its omission of the requirement of consent of both parties for lawful interception, perpetuates that requirement decisions applying Pennsylvania law indicate that it does not apply where a party “intercepts” his own conversation and uses it for his own purposes. In
 
 Parkhurst v. Kling,
 
 266 F.Supp. 780, 781 (E.D.Pa.1967) the court, distinguishing the case in which a party to a telephone conversation recorded it, from the case in which a private detective, listened to a conversation on a telephone extension, and there was therefore “interception because permission to eavesdrop was not obtained from
 
 both
 
 parties to the conversation,” held that the anti-interception law was not “intended to prohibit one
 
 party
 
 to a telephone conversation from recording that conversation for his own purposes.” (Emphasis in original.) Similarly,
 
 Commonwealth v. Goldberg,
 
 208 Pa.Sup. 513, 224 A.2d 91 (1966) distinguished the case of interception by a subscriber to telephone service who has “a paramount right” to make interception on his own line in order to protect his business interests.
 
 [5]
 

 The wording of the new anti-wiretap statute in terms of justifiable expectations suggests, however, a departure from the prior statutes and the adoption of the “reasonable expectation of privacy” standard which courts apply in civil as well as criminal actions to determine violations of the Fourth Amendment to the United States Constitution.
 
 Katz v. United States,
 
 389 U.S. 347, 88 S.Ct. 507,19 L.Ed.2d 576 (1967),
 
 Robbins
 
 v.
 
 State of California,
 
 - U.S. -, 101 S.Ct. 2841, 2847, 69 L.Ed.2d 744 (July 1, 1981) (“Expectations of privacy are established by general social norms .... ”). In
 
 United States v. Criden,
 
 501 F.Supp. 854, 861-2 (E.D.Pa.1980)
 
 reversed on other grounds,
 
 648 F.2d 814 (3rd Cir. 1980) the federal court in Pennsylvania applied this standard and held that
 

 surreptitiously obtained [audio tape] recordings ... become admissible only where one of the parties to the conversation has consented to the recording. The law takes the position that . . . when A has a conversation with B, neither party can be sure that the other party will not disclose what was said. Therefore, if A has no reasonable expectation of privacy with respect to the contents of his conversation with B, the fact that B records the conversation merely ensures accuracy, and violates no right of A.
 

 This court is reluctant to construe a recently enacted Pennsylvania statute, in ruling on a motion to dismiss without guidance from the courts of that state.
 
 [6]
 
 In the
 
 *1276
 
 instant case, however it is inconceivable that the defendant could prove any facts relating to the circumstances of the communication between defendant Arco and plaintiff which would justify an expectation of ■privacy on Arco’s part. Plaintiff is not charged with recording a facet of corporate existence such as trade secrets in which a corporation would have an interest in privacy vis-a-vis another corporation, but — a point of intersection of the corporation with the general public. The communication by Arco’s agents terminated plaintiff’s employment. No employer could reasonably expect, when it dismisses an employee that the employee will not report the fact to family and friends and, in attempts to explain it, rely on the communications by the employer. Here, as in
 
 Criden,
 
 a recording would serve to ensure the accuracy of the report of . employer’s communication. Closed doors could only protect the right of the employee to minimize the shame and embarrassment he feels at being fired.
 
 [7]
 

 II. Texas Common Law
 

 Defendant’s argument that Texas common law privacy extends to defendant’s claim in this case is clearly without merit.
 
 Billings v. Atkinson,
 
 489 S.W.2d 858 (Tex. 1973), which announced the right of privacy in Texas, concerned a third party’s eavesdropping on telephone conversations between plaintiff and his wife. The court wrote,
 

 [T]he right of privacy has been defined as the right of an individual' to be left alone, to live a life of seclusion, to be free from unwarranted publicity .... The right to be free from unwarranted appropriation or exploitation of one’s personality. The publicizing of one’s private affairs with which the public has no legitimate concern, or the wrongful intrusion into one’s private activities in such manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities.
 

 Id.,
 
 at 859. Noting that eavesdropping was an indictable offense at common law, it, stated
 

 the increased complexity and intensity of modern civilization and the development of man’s spiritual sensibilities have rendered man more sensitive to publicity and have increased his need for privacy while the great technological improvement in the means of communication have more and more subjected the intimacies of private life to exploitation by those who pander to commercialism and to prurient and idle curiosity. A legally enforceable right of privacy is deemed to be a proper protection against this type of encroachment upon the personality of the individual.
 

 Id.,
 
 at 860, quoting 62 Am.Jur.2d
 
 Privacy,
 
 § 4, (1972).
 

 None of the
 
 Billings v. Atkinson
 
 “progeny” on which defendant relies expand this personal right of privacy to protect the economic, commercial interests of a corporation or the business and financial interests of an individual.
 
 Gonzales v. Southwestern Bell Telephone Co.,
 
 555 S.W.2d 219 (Civ.App.1977) held a telephone company’s employee’s entrance into plaintiff’s home and removal of her telephone constituted an invasion of privacy, because this intrusion on plaintiff’s seclusion is like “eavesdropping upon private conversations by wiretapping, microphones or spying into windows.” In
 
 Moore v. Charles B. Pierce Film Enterprise,
 
 589 S.W.2d 489, 491 (Civ.App.1979) the court held that “the right of privacy is purely personal and terminates upon the death of the person whose privacy is invaded.” In
 
 Cullum v. Government Employees Financial Corp.,
 
 517 S.W.2d 317 (Civ.App. 1974) the court held the right of privacy does not extend to defendant’s letters to plaintiff’s employer seeking assistance in collecting a debt from plaintiff.
 
 Jacobson
 
 
 *1277
 
 v.
 
 Citizens State Bank,
 
 587 S.W.2d 480 (Civ. App.1979) held that the exhibition by defendant bank of a customer’s transaction to an IRS agent in conformity with an act of Congress did not invade privacy. In
 
 Wolfe v. Arroyo,
 
 543 S.W.2d 11 (Civ.App.1976) the court granted defendant summary judgment, holding that a doctor had no cause of action for invasion of privacy against the plaintiff in an allegedly groundless and unfounded malpractice action.
 
 [8]
 
 Thus, the cases do not support a Texas common law cause of action by defendant Arco Chemical Company for violation of privacy by plaintiff’s alleged playing of a recording of the conversation in which defendant terminated plaintiff’s employment.
 

 “If there is any possibility that the facts the plaintiff alleges could support a claim, then a dismissal under Rule 12(b)(6) is improper. But when the lack of a state claim is apparent, dismissal at this point in the proceeding, does not constitute a premature trial on the merits.”
 
 Keating v. Shell Chemical Co.,
 
 610 F.2d 328, 331-2 (5th Cir. 1980). The Court concludes that there is no statutory or common law ground for defendant’s counterclaim and it is therefore DISMISSED. The Court does not find, however, that the counterclaim was brought without legal cause to harass plaintiff, and therefore plaintiff’s motion for reimbursement of attorney’s fees is DENIED.
 

 [1]
 

 . The complaint charges defendant with age discrimination in employment, in violation.of 29 U.S.C. § 623
 
 et seq.
 

 [2]
 

 .
 
 Defendant’s counterclaim includes the letter written by Katherine Barr, dated August 21, 1978 which is incorporated as an exhibit in ¶ 4(b) of the counterclaim.
 
 Amfac Manufacturing Corporation v. Arizona Mall of Tempe,
 
 583 F.2d 426 (9th Cir. 1978).
 

 [3]
 

 . Section 5703 made evidence obtained in violation of the act inadmissible and § 5704 provided civil damages for interception.
 

 [4]
 

 . Restatement (Second) of Torts §§ 652B-E (1977) identifies four categories of invasion of privacy:
 

 § 652B. INTRUSION UPON SECLUSION
 

 One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another, or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable man.
 

 § 652C. APPROPRIATION OF NAME OR LIKENESS
 

 One who appropriates to his own use or benefit the name or likeness of another, is subject to liability to the other for invasion of privacy.
 

 § 652D. PUBLICITY GIVEN TO PRIVATE LIFE
 

 One who gives publicity to matters concerning the private life of another, of a kind highly offensive to a reasonable man, is subject to liability to the other for invasion of his privacy.
 

 § 652E. PUBLICITY PLACING PERSON IN FALSE LIGHT
 

 One who gives to another publicity which places him before the public in a false light of a kind highly offensive to a reasonable man, is subject to liability to the other for invasion of his privacy.
 

 [5]
 

 .
 
 See United States v. Vespe,
 
 389 F.Supp. 1359, 1372 (D.Del.1975).
 

 [6]
 

 . Particularly where the law is unsettled, it is not advisable to dismiss a claim unless absolutely clear no cause of action could be stated given the actual facts.
 
 Builders Corporation of
 
 
 *1276
 

 America v. United States,
 
 259 F.2d 766, 771 (9th Cir. 1958).
 

 [7]
 

 . Because the court finds that the Pennsylvania statute does not apply to this factual situation it does not consider the question whether plaintiffs use of a recording in deposition is protected from defendant’s privacy claims as part of a judicial proceeding.
 

 [8]
 

 . Texas courts do protect an individual’s privacy interest in a profession in special circumstances. Thus, in
 
 Kimbrough v. Coca-Cola/U. S. A.,
 
 521 S.W.2d 719 (Tex.Civ.App.1975), the court upheld plaintiffs right of privacy in the sense, not of intrusion on seclusion, but of protection from the unauthorized appropriation of a football player’s name and likeness. Defendant, here, however, does not claim appropriation of a name or likeness.